[No. H002283. Sixth Dist. Jan. 19, 1989.]

BANK OF AMERICA, Plaintiff and Respondent, v.
SALINAS NISSAN, INC., et al., Defendants and Appellants.

**COUNSEL**

Diemer, Schneider, Luce & Quillinan, James G. Luce, Meyer & Mitchell, Daniel L. Mitchell, Bennett Cohen, Brian Thornton, Hoecker & McMahon, Gary W. Hoecker, David Wade, Pilot & Spar, A. Albert Spar, Cathleen Cooper Moran, Margaret G. Laliberte and Susan B. Luce for Defendants and Appellants.

Buchalter, Nemer, Fields & Younger, Gary Nemer, James B. Wright, Lorraine B. Moura, Peter M. Rehon and John Cooney for Plaintiff and Respondent.

**OPINION**

**AGLIANO, P. J.—**

### 1. *Introduction*

Defendants Lloyd and Frances Clark, John and Minnie Taylor[1] (collectively "guarantors"), RCT Corporation (doing business as Monterey Peninsula Ford, Lincoln-Mercury), and Salinas Nissan, Inc. ("SN"; collectively "dealerships") appeal from orders granting plaintiff Bank of America National Trust and Savings Association rights of attachment. (Code Civ. Proc., § 904.1, subd. (e); unspecified section references are to the Code of Civil Procedure.) We will reverse in part because the court did not resolve claims of exemption by guarantors.

### 2. *Plaintiff's application for a right to attach*

On May 21, 1986, plaintiff filed a verified complaint alleging breaches of several contracts involving the two car dealerships by defendants and others. Plaintiff obtained ex parte temporary restraining orders against guarantors and SN and a writ of possession of certain collateral, specifically SN's new and used cars. Pursuant to the writ of possession, plaintiff recovered collateral valued at $1,323,000, leaving a deficiency of $1,244,000. On June 11, plaintiff filed an application for a right to attach order and a writ of attachment in the amount of $1,370,000, scheduling a hearing for July 10.

Plaintiff applied to attach all of the following types of property owned by defendants: real property, personal property, equipment, motor vehicles, chattel paper, negotiable and other instruments, securities, deposit accounts, safe deposit boxes, accounts receivable, general intangibles, property subject to pending actions, final money judgments, and personalty in estates of decedents.

Plaintiff's application for attachment was based primarily on two declarations (§ 484.030) by R. R. Smith, a vice-president of plaintiff, and its complaint, verified by Smith (§ 482.040). Smith described the following situation.

Plaintiff had three different agreements with SN. One was a flooring and security agreement whereby plaintiff agreed to finance SN's purchase of new cars and SN agreed to hold the new cars in trust for plaintiff and to repay plaintiff from the proceeds of the sales of new cars. Another was a flooring and security agreement whereby SN agreed to sell repossessed vehicles on

---

[1] On June 13, 1988, we granted a motion to substitute the Taylor's trustee in bankruptcy in their places on appeal.

plaintiff's behalf. SN had breached both agreements by failing to pay plaintiff the proceeds of car sales. In other words, cars were being sold "out of trust." These agreements were secured by SN's inventory, accounts, contract rights, and general intangibles. The third agreement was for dealer financing, which SN had breached by failing either to purchase installment sales contracts in default from plaintiff at plaintiff's request or to turn over the vehicles.

Plaintiff had similar agreements for dealer financing and flooring and security with RCT which RCT had breached by failing to turn over the proceeds from repossessed cars sold on plaintiff's behalf and failing either to purchase installment sales contracts in default from plaintiff at plaintiff's request or turn over the vehicles. The flooring and security agreement was secured by RCT's used inventory, accounts, contract rights, and general intangibles.

Bill Rind, who was in charge of both dealerships, disappeared in August 1985 and was said to have taken over $1 million from the dealerships. Plaintiff installed a keeper at SN in April 1986 to approve of all car sales.

Guarantors had personally guaranteed in writing the dealerships' performance of the above-described agreements. Guarantors had injected substantial funds into SN to pay for cars sold out of trust, but had breached their guaranties by failing to cover the payments owed by dealerships. These guaranties include a waiver by guarantors of any right to have plaintiff proceed first against any security.

### 3. *Defendant's opposition*

On June 30, defendants filed a verified answer and cross-complaint. On July 2, all defendants filed opposition to plaintiff's attachment application and guarantors filed claims of exemption on a form "notice of opposition to application for right to attach order and claim of exemption." (Plaintiff's application, defendants' opposition and claims of exemption, and the court's orders all employed forms designed by the Judicial Council (§ 482.030) to implement The Attachment Law (§ 482.010).)

The opposition was based primarily on declarations and a cross-complaint verified by Lloyd Clark and John Taylor describing the following situation.

In May 1983, Rind and defendants John Taylor and Lloyd Clark purchased all the stock of SN. In May 1984, the same individuals formed RCT to acquire Monterey Ford. Taylor and Clark both had prior experience owning various automobile dealerships and had entered prior contracts with plaintiff for flooring and dealer financing.

Plaintiff itself breached the dealer financing agreements with SN and RCT by: purchasing installment sales contracts which had inadequate credits and down payments and overadvances (i.e., the amount financed exceeded the car maker's invoice plus tax, license, insurance, and service contract); accepting guaranties from the wrong people; failing to inform defendants the delinquency rate on installment contracts exceeded 3 percent and to make diligent collection efforts before repossessing cars or demanding repurchase of the installment contracts.

Plaintiff itself breached the flooring and security agreement with SN by failing to notify defendants that Rind was selling vehicles out of trust and to properly conduct monthly flooring inspections to determine whether vehicles were being sold out of trust. Plaintiff had promised to do all of this according to the custom and practice in the industry.

Moreover, plaintiff had misled defendants either intentionally or negligently into making these flooring and financing agreements and written guaranties by making the above promises. Further, plaintiff had conspired with Rind to create this situation. There was a fiduciary relationship between plaintiff and John Taylor and Lloyd Clark giving rise to a duty to disclose the above misconduct. Plaintiff violated an implied covenant of good faith and fair dealing.

Plaintiff further misled defendants either intentionally or negligently after Rind stopped operating the dealerships in August 1985 by informing defendants that the above problems either did not exist or would soon be corrected and that plaintiff would increase its capital loan to SN and RCT. This induced guarantors to execute their guaranties and induced dealerships to execute new flooring and financing agreements.

Defendants' opposition also contained a declaration from an expert in automobile dealer financing, stating the following. It was the custom and practice in the industry for a lender not to make overadvances. Overadvances jeopardize a dealership because if the buyer defaults and the car is repossessed and sold, the dealer will be responsible for the higher unpaid remainder. Overadvances are rarely given, and only when the dealership unconditionally guarantees full payment in the event of default.

Defendants' opposition form asserted, among other things, plaintiff had not identified the specific property sought to be attached. Defendants' opposition permissibly contained certain exemption claims by guarantors. (§ 484.060, subd. (b).) Clarks claimed an exemption for a 1978 Ford truck. Taylors claimed an exemption for an 1985 Nissan Maxima and a homesteaded residence. Guarantors' exemption claims were otherwise the same. All claimed exemptions for $2.5 million life insurance policies, household furnishings and personal effects, and income needed to sustain their trade or

business. This amounted to $3,000 monthly from Modesto Mazda, $5,000 monthly from Toyota North, and $2,500 monthly from Public Leasing Corp. Guarantors also claimed several corporations to be exempt property, including SN and RCT.

In support of these exemption claims, Lloyd Clark declared that the information in his claims was accurate and that attachment of his personal assets would wreak financial havoc on his family and his related businesses, which were financially interdependent, and would force him into bankruptcy. John Taylor's declaration was essentially similar.

## 4. *Challenged rulings*

After the hearing on July 10, the court on July 15 issued an order granting plaintiff the right to attach the assets of defendants SN and guarantors in the amount of $1 million. A formal order to this effect was filed on July 18.

Meanwhile, on July 17, a hearing was held on plaintiff's motion to reconsider an earlier denial of a right to attach the property of RCT. After the hearing, the court granted plaintiff's right to attach in the amount of $803,689, conditioned on approval by the Monterey County Superior Court in another action. The motion by defendants SN and guarantors to modify the attachment in part to exclude exempt property was denied on July 28 after a hearing on July 25.

## 5. *Adequacy of plaintiff's description of property*

Defendant guarantors contend plaintiff's attachment application did not adequately specify which of their property plaintiff sought to attach.

Section 484.020, subdivision (e), allows an attachment application to simply request attachment of " 'all corporate property which is subject to attachment' " when the defendant is a corporation. However, "Where the defendant is a natural person, the description of the property shall be reasonably adequate to permit the defendant to identify the specific property sought to be attached." (§ 484.020, subd. (e).)

The requirement of specificity is an innovation in a 1974 revision of the Attachment Law, sections 481.010 et seq. We find no cases interpreting this provision.

The Comment of the Law Revision Commission provides guidance to the Legislature's intent. (*Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 249-250 [66 Cal.Rptr. 20, 437 P.2d 508].) It states: "Section 484.020, together with Section 484.030, is substantively similar to former Section 538. How-

ever, where the defendant is an individual, subdivision (e) of Section 484.020 requires the plaintiff to include in his application a description of the property sought to be attached which is reasonably adequate to permit the defendant to identify such property. [¶] The writ issued pursuant to Section 484.090 is limited to the property described in the plaintiff's application. Thus, the defendant can determine whether he desires to make a claim of exemption as to that property. It is believed that, in many cases, the defendant will be willing to waive his claim and that this will result in a substantial saving in the time of court and counsel. . . . A specific description is required only where the defendant is an individual. Corporations and partnerships generally have no exempt property. See Sections 487.010 and 487.020 and the Comments thereto. Hence, it is unnecessary to include a specific description for the purpose of either limiting the property sought to be attached or facilitating a claim of exemption." (See Cal. Law Revision Com. com., Deering's Ann. Code Civ. Proc., § 484.020 (1988 pocket supp.) p. 57.)

The requirement of specificity appears designed to avoid unnecessary hearings where an individual defendant is willing to concede that certain described property is subject to attachment. We do not understand it to prohibit a plaintiff from targeting for attachment everything an individual defendant owns. So long as the property descriptions are adequate, section 484.020, subdivision (e), allows for the possibility that a plaintiff may want to make such a comprehensive attempt, possibly in order to provoke and resolve an individual defendant's exemption claims all at once. When a plaintiff notices a hearing on an attachment application, the defendant must assert any exemption claims for targeted personal property five days before the hearing or such claims are deemed waived, absent a change of circumstances. (§§ 484.070, subds. (a), (e); 482.100.)

We conclude plaintiff's application here, though all-inclusive, was reasonably adequate to inform guarantors what property was targeted for attachment.

### 6. *Claims of exemption*

■ Defendant guarantors assert the trial court erred in failing to grant their claims of exemption.

Guarantors avoided waiving their exemption claims for personal property by filing them before the noticed hearing on plaintiff's attachment application. The Taylors also exercised their option to simultaneously assert an exemption claim for real property. (§§ 484.070, subd. (b), 487.030.) "The claim of exemption shall be accompanied by an affidavit supporting any

factual issues raised by the claim and points and authorities supporting any legal issues raised." (§ 484.070, subd. (d).)

Section 484.070 further provides: "(f) If the plaintiff desires to oppose the claim of exemption, the plaintiff shall file and serve on the defendant, not less than two days before the date set for the hearing, a notice of opposition to the claim of exemption, accompanied by an affidavit supporting any factual issues raised and points and authorities supporting any legal issues raised. If the plaintiff does not file and serve a notice of opposition as provided in this subdivision, no writ of attachment shall be issued as to the property claimed to be exempt. If all of the property described in the plaintiff's application is claimed to be exempt and the plaintiff does not file and serve a notice of opposition as provided in this subdivision, no hearing shall be held and no right to attach order or writ of attachment shall be issued and any temporary protective order issued pursuant to Chapter 6 (commencing with Section 486.010) immediately expires. [¶] (g) If the plaintiff files and serves a notice of opposition to the claim as provided in this section, the defendant has the burden of proving that the property is exempt from attachment."

Guarantors' claims of exemption were neither opposed in writing by plaintiff nor argued at the hearings on July 10 and July 17. The court granted rights to attach virtually all the property of defendants, checking the box on the Judicial Council form stating defendants had "failed to prove that all of the property described in plaintiff's application is exempt from attachment." (See § 484.090, subd. (b).) There was no other finding whether or not any of the property was exempt.

After the rights to attach were granted, defendants moved for reconsideration of their exemption claims, among other things. At the hearing, the court said the time for a hearing on exemptions was after the right to attach was granted and after guarantors made a motion to declare exemptions. Guarantors responded, "Your Honor, the code provides actually that we can make a claim for exemption at the time of the motion for a writ to attach order . . . ." The court mentioned they had not presented exemption claims in the earlier hearing. Guarantors responded, "We didn't because there was so much other ground to cover[.] But the fact is we made the claim[s], they were filed and they have never been rebutted by [plaintiff]."

What the court apparently had in mind was that exemption claims can be raised within 30 days after an ex parte writ of attachment. (§ 484.530, subd. (a).) As previously explained, the procedure is different for a noticed hearing on an attachment application. The defendant is deemed to have waived

exemption claims for personal property not asserted for resolution at the noticed hearing.

Plaintiff, in its reply brief, characterizes the situation as one where the trial court justifiably found defendants had failed to prove their exemption claims. Guarantors contend they had no burden of proof to carry at the hearing because plaintiff did not oppose their exemption claims. Plaintiff, for the first time at oral argument, also suggests the trial court was free to disregard guarantors' unopposed exemption claims as spurious. We are presented with another question of statutory interpretation, again finding no precedent under the relatively new Attachment Law.

■ "[A]ttachment procedures are solely creatures of statute and . . . such statutes must be strictly construed." (*Arcata Publications Group* v. *Beverly Hills Publishing Co.* (1984) 154 Cal.App.3d 276, 279 [201 Cal.Rptr. 223], and cases there cited.) "Our judicial role in interpretation of this statute is simply to ascertain the intent of the Legislature (Code Civ. Proc., § 1859; [citations]), 'not to insert what has been omitted, or to omit what has been inserted.' (Code Civ. Proc., § 1858.) ■ 'The judiciary has no power to rewrite plain statutory language' under the guise of construction. [Citation.] When the meaning is plain, we apply it. [Citations.]" (*Greyhound Lines, Inc.* v. *County of Santa Clara* (1986) 187 Cal.App.3d 480, 487 [231 Cal.Rptr. 702].)

■ It could hardly be clearer that, just as the defendant is required to make exemption claims before a noticed hearing on an attachment application, so the plaintiff is required to oppose any such claims. A defendant is deemed to have waived any untimely claim of exemption for personal property. Similarly, a plaintiff's lack of opposition concedes the propriety of timely exemption claims. The Attachment Law dictates when and how a plaintiff must challenge a claim of exemption. We refuse to rewrite the statute to allow a plaintiff to question the validity of aspects of an exemption claim for the first time on appeal.

It may well be preposterous for an individual shareholder to claim an entire corporation as property which is necessary for the support of the shareholder's family. (See § 487.020, subd. (b).) Presumably guarantors' exemption claims meant the income they derived from the corporations and not the corporate assets.

We conclude the court erred in finding that guarantors failed to prove all the property was exempt. Absent opposition from plaintiff, guarantors were not required to prove this claim. The trial court had no discretion, absent some opposition by plaintiff, to ignore guarantors' exemption claims. Absent opposition, section 484.070, subdivision (f), provides "no writ of attachment shall be issued as to the property claimed to be exempt."

We proceed to analyze defendants' remaining contentions because guarantors' exemption claims cannot be understood to shield the dealerships' property.

### 7. *The relative strengths of plaintiff's showing and defendants' opposition*

Defendants contend: plaintiff was not entitled to attachment on claims otherwise secured, as were most, if not all, of the agreements with dealerships; "[t]he failure of plaintiff to affirmatively aver that it was without fault for the reduction in the value of its security is by itself grounds to deny plaintiff a writ of attachment"; the evidence does not support the trial court's finding on the Judicial Council form, "The claim upon which the application is based is one upon which an attachment may be issued." (See § 484.090., subd. (a)(1).)

### A. *Statutory requirements*

Under The Attachment Law, "[w]hether or not the defendant appears in opposition, the plaintiff has the burden of proving (1) that his claim is one upon which an attachment may be issued and (2) the probable validity of such claim." (Legis. Com. com., Deering's Ann. Code Civ. Proc., § 484.090 (1988 pocket supp.) p. 64.)

Section 483.010 defines the types of claims warranting attachment. Generally, attachment is available only on contract claims for money. Section 483.010 further provides: "(b) An attachment may not be issued on a claim which is secured by any interest in real or personal property arising from agreement . . . (including . . . any security interest subject to Division 9 (commencing with Section 9101) of the Commercial Code . . . ). However, an attachment may be issued (1) where the claim was originally so secured but, without any act of the plaintiff or the person to whom the security was given, the security has become valueless or has decreased in value to less than the amount then owing on the claim, in which event the amount for which the attachment may issue shall not exceed the lesser of the amount of the decrease or the difference between the value of the security and the amount then owing on the claim . . . ."

We must construe this subdivision to determine what burden, if any, it imposes on one seeking attachment on a secured contract.

Defendants rely on decisions which construed former attachment statutes to impose a condition precedent for attachment that the plaintiff's affidavit aver the plaintiff had not caused the security to become valueless. (*Yosemite etc. Assn.* v. *Case-Swayne Co.* (1946) 73 Cal.App.2d 806, 811-814 [167 P.2d 541], and cases there cited.) Former section 538 provided for issuance of a

writ of attachment "upon receiving an affidavit by or on behalf of the party seeking the writ showing: [¶] 1. The facts specified in [former] Section 537 which entitle them to a writ." (See prior law annot., Deering's Ann. Code Civ. Proc., § 538 (1972 ed.) p. 733.) Former section 537 provided, among other things, that property could be attached "where the contract . . . is not secured by any mortgage, deed of trust, or lien upon real or personal property, or any pledge of personal property, or, if originally so secured, such security has, without any act of the plaintiff, or the person to whom the security was given, become valueless." (Deering's Ann. Code Civ. Proc., *supra,* § 537, p. 702.)

Did the revision of the attachment statutes remove this burden from a plaintiff seeking attachment on a secured contract? We find no assistance on this point in the Law Revision Commission comments on the new Attachment Law. ■ "[W]hen . . . the Legislature undertakes to amend a statute which has been the subject of judicial construction . . . it is presumed that the Legislature was fully cognizant of such construction, and when substantial changes are made in the statutory language it is usually inferred that the lawmakers intended to alter the law in those particulars affected by such changes." (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].)

We find conflicting indications in the new Attachment Law regarding the contents of a plaintiff's affidavit in support of attachment. The statute does not expressly require an applicant's affidavit to contain every fact specified elsewhere in the statute. An application for a right to attach "shall be supported by an affidavit showing that the plaintiff on the facts presented would be entitled to a judgment on the claim upon which the attachment is based." (§ 484.030.) The affidavit thus should be geared to establishing the probable validity of the plaintiff's claim. (§§ 484.090, subd. (a)(2), 481.190.)

On the other hand, the application "shall be executed under oath and shall include . . . [¶] (a) A statement showing that the attachment is sought to secure the recovery on a claim upon which an attachment may be issued." (§ 484.020.) The plaintiff is required to establish that "[t]he claim upon which the attachment is based is one upon which an attachment may be issued." (§ 484.090, subd. (a)(1).) ■ We look to other parts of The Attachment Law to find what claims warrant attachment, since related statutory provisions should be harmonized, if possible. (*Younger* v. *Younger* (1895) 106 Cal. 377, 380-381 [39 P. 779]; *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist., supra,* 21 Cal.3d 650, 659; § 1858.) Section 483.010, quoted above, spells out what claims authorize attachment.

Under The Attachment Law, the court will generally evaluate the attachment application based solely on the pleadings and supporting affidavits without taking additional evidence. (§ 484.090, subd. (d).)

Reading these parts of the statute together, we conclude it remains the plaintiff's burden in seeking to attach on an originally secured contract to prove (1) the security has diminished in value and (2) plaintiff was not responsible for the diminution. It is no longer necessary for the plaintiff's affidavit to contain such averments. Such averments would still be prudent, since the court need not consider additional evidence at the attachment application hearing without good cause.

We disagree with defendants' further suggestion, at oral argument, that the court was required to make a specific finding that plaintiff was not responsible for any diminution in the security's value. In our view, the court implicitly so found by adopting the Judicial Council form finding made here.

### B.  *Sufficiency of the evidence*

We proceed to evaluate defendants' contention that plaintiff did not carry the above-described burden, leaving the court's finding unsupported by the evidence.  An appellate court applies the same substantial evidence standard of review to an attachment hearing decided on affidavits and declarations as to a case tried on oral testimony. (*Loeb & Loeb* v. *Beverly Glen Music, Inc.* (1985) 166 Cal.App.3d 1110, 1120 [212 Cal.Rptr. 830]; *Lorber Industries* v. *Turbulence, Inc.* (1985) 175 Cal.App.3d 532, 535 [221 Cal.Rptr. 233]; cf. *Doak* v. *Bruson* (1907) 152 Cal. 17, 19 [91 P. 1001]; *Weathers* v. *Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 108 [95 Cal.Rptr. 516, 485 P.2d 1132], and cases there cited.) "We review the evidence on appeal in favor of the prevailing party, resolving conflicts and drawing reasonable inferences in support of the judgment." (*Claussen* v. *First American Title Guaranty Co.* (1986) 186 Cal.App.3d 429, 431 [230 Cal.Rptr. 749].) "Though the probative facts are undisputed, we cannot substitute our inferences for those of the trial court reasonably grounded on substantial evidence." (*Id.* at p. 436.)

Plaintiff's affidavits did not expressly disclaim responsibility for any diminution in its security's value. Plaintiff's showing appears to have been primarily aimed at establishing the probable validity of its claim. However, as plaintiff notes, its vice-president declared that there was a shortfall comparing the security at SN and RCT to the debt owing. The evidence regarding defendants' contract breaches and Rind's defalcation tends to show who was responsible for any diminution in value. This evidence was enough to support the trial court's implied finding that plaintiff

was not responsible for any diminution in its security's value. (Accord *Western Bd. of Adjusters, Inc.* v. *Covina Pub., Inc.* (1970) 9 Cal.App.3d 659, 674 [88 Cal.Rptr. 293].)

Contrary to defendants' further argument, the trial court was not required to accept as true their evidence of plaintiff's blameworthiness because plaintiff did not respond to it. Defendants rely on *Barbieri* v. *Ramelli* (1890) 84 Cal. 174, 176 [24 P. 113], which held that a court was required to accept as true a defendant's specific affidavits in opposition to an attachment when the plaintiff's affidavits were general. *Barbieri* has been implicitly overruled. "In *Lohman* v. *Lohman,* 29 Cal.2d 144, 149 . . . [the Supreme Court] held that 'a trial judge is not required to accept as true the sworn testimony of a witness, even in the absence of evidence directly contradicting it, and this rule applies to an affidavit.'" (*Tammen* v. *County of San Diego* (1967) 66 Cal.2d 468, 477 [58 Cal.Rptr. 249, 426 P.2d 753].)

The trial court rejected defendants' claims that plaintiff had expressly or implicitly made the promises asserted by defendants and that plaintiff intended to defraud and deceive defendants. At the hearing on July 10, the court pointedly asked, "What advantage would there be to the [plaintiff] to have a dealership go out of business because of repossessions?"

The trial court implicitly found that plaintiff was not responsible for a diminution in its security's value. We conclude that plaintiff carried its burden of proving its nonresponsibility and that the trial court was not required to believe defendants' contrary evidence. Defendants have identified no error in granting rights to attach based on claims previously secured.

## 8. *Disposition*

As discussed in part 6, we reverse the orders granting rights to attach property claimed to be exempt by guarantors. We otherwise affirm the orders. Guarantors to recover costs on appeal.

Brauer, J., and Cottle, J., concurred.