[No. B196551. Second Dist., Div. Eight. July 8, 2008.]

ANITA GOLDSTEIN et al., Plaintiffs and Respondents, v.
BARAK CONSTRUCTION et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts 1.B., 1.C., and 2. of the Discussion.

848

COUNSEL

The Dodell Law Corporation, Herbert Dodell and Perry R. Fredgant for Defendants and Appellants.

No appearance for Plaintiffs and Respondents.

OPINION

FLIER, J.—Barak Construction (Barak) and Ami Weisz (sometimes hereafter appellants) appeal from (1) the trial court's order granting the application of respondents Anita Goldstein and Eric Mizrahi for a right to attach order and order for issuance of writ of attachment against Barak and (2) its order

directing Weisz not to "sell, encumber, or diminish the value of his residence" until the action is adjudicated or upon further order of the court. We affirm.

## FACTS[1]

Respondents own a residence in Los Angeles, California. In June 2004, Weisz represented to respondents that he was personally engaged in the business of residential construction and remodeling and that Barak was "his" company. Weisz also stated that both he and Barak were licensed California building contractors. In reliance on these statements, respondents entered into a contract with Barak for an addition to, and a remodeling of, their home. The work to be performed under the contract included demolition and disposal of an existing garage, excavation and pouring of concrete foundations for a new structure, furnishing structural steel for the new construction, erecting the framing and roof of the new structure and plumbing, electrical, heating, air conditioning, interior finishing, painting and other work. The total cost for all material and labor was $363,000.

Neither Barak nor Weisz was a licensed contractor at the time the contract was signed on June 18, 2004. After the contract was executed, Barak commenced working on the project. Three months later, on September 17, 2004, Barak obtained a contractor's license for the first time.

Respondents allegedly paid Barak the sum of $362,660.50 under the contract. However, Barak allegedly abandoned the job before the work was completed, leaving respondents with a home that was unfinished and riddled with construction defects.

Respondents filed the present action against Barak, Weisz and others in March 2005. As against both appellants, the verified complaint sought

---

[1] Respondents have failed to file any brief. Although it is the appellant's duty to show error, the respondent has a corresponding obligation to aid the appellate court in sustaining the judgment or order. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 612, p. 644.) We may, in our discretion, treat respondents' failure to file a brief as an acknowledgement that the appeal is well taken and reverse the trial court's orders. (*Bennett v. California Custom Coach, Inc.* (1991) 234 Cal.App.3d 333, 338 [285 Cal.Rptr. 649]; see Cal. Rules of Court, rule 8.220(a)(2).) Notwithstanding respondents' dereliction of duty, we have undertaken to examine the record on the basis of appellants' brief, and review the orders for prejudicial error. (234 Cal.App.3d at p. 338; see rule 8.220(a)(2).)

The facts are set forth in accordance with fundamental rules of appellate review, including that all evidence must be viewed in the light most favorable to the respondent and in support of the judgment or orders from which the appeal is taken. (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925–926 [101 Cal.Rptr. 568, 496 P.2d 480]; *Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; see generally *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].)

recovery for fraud, negligent misrepresentation, concealment, negligence, breach of implied warranties, breach of contract and unfair business practices. The complaint also sought recovery of money paid to an unlicensed contractor as against Barak.

Appellants filed a verified answer to the complaint. Appellants admitted that Barak entered into a contract "relating to the construction of an addition to, and remodeling of, [respondents'] residence." The answer admitted that a general building contractor license was not issued to Barak until September 17, 2004, and neither Barak nor Weisz held a California building contractor's license at the time the contract with respondents was executed. Appellants also admitted in their answer that Weisz was an officer, director and majority shareholder of Barak and alleged that respondents made payments to Barak totaling $362,629.50. They further admitted that Barak never held a contractor's license prior to entering into the contract with respondents.

After appellants filed their verified answer, respondents filed applications for a right to attach order and order for issuance of a writ of attachment against Barak and Weisz. Respondents asked for an attachment in the amount of $385,388, which included $362,660.50 respondents allegedly paid Barak, estimated costs of $643 and allowable attorney fees of $22,084.50. Respondents proffered a declaration testifying to the basic facts as related, *ante.* The declaration further averred that respondents were obliged to retain attorneys to seek recovery of the amounts they paid under the contract, and they incurred attorney fees of $22,084.50 and costs of $643 in prosecuting the case.

Appellants filed a written opposition to the applications. The opposition raised four contentions: (1) respondents' claim was not based on a contract; (2) the amount was not fixed or readily ascertainable; (3) respondents had not proved the probable validity of their claim by a preponderance of evidence; and (4) there was no legal or factual basis for allowing an attachment against Weisz individually. Appellants further took issue with the amount sought to be secured by the attachment, arguing that (1) over $80,000 of the funds paid Barak was for "extras" separate from the subject contract; (2) $34,800 of the contract was for allowances paid directly by respondents to third parties; (3) Barak was seeking an offset for work performed and materials provided but not paid for; and (4) respondents had not apportioned fees and costs among multiple defendants. The opposition specifically did not include notice of any intention to claim any exemption of property from attachment.

Weisz filed a declaration stating that he had incorporated Barak on April 17, 2003, and Barak has been an active corporation in good standing since then. Weisz asserted Barak had been adequately capitalized and had maintained a separate corporate existence. He admitted the facts of the contract

but asserted the contract price included $34,800 in allowances that respondents paid third parties. He stated that respondents had an unpaid balance on the contract of $56,470. Weisz admitted that Barak had not completed respondents' project, but he claimed it was due to the "wrongful conduct" of respondents. Also, he contended, the project included "extras" agreed to by respondents in the amount of $93,150.60, of which respondents paid $90,899.50, leaving the sum of $2,251.10 of "extras" unpaid. According to Weisz, $81,470.13 of the "extras" paid for by respondents was requested and performed after Barak obtained its contractor's license.

Weisz declared that Barak had submitted an application for a contractor's license in mid-2003, and Aharon Vaknin, then a shareholder of Barak, had taken the contractor's license examination in March or April 2004. Vaknin failed to pass all the portions of the examination. It was not until August 2004 that Vaknin was able to retake and pass the examination, after which a license was issued to Barak on September 17, 2004.[2]

Weisz claimed Barak performed "very little" work on respondents' project, primarily site preparation and demolition, prior to issuance of the license. He stated the "majority" of the work under the contract occurred after Barak had its license. He denied ever telling respondents he or Barak had a contractor's license and asserted the subject of licensing never came up in his discussions with respondents. Weisz contended on information and belief that respondents "knew" Barak did not have a contractor's license when they entered into the contract. He stated he advised respondents at the time of contracting that he would engage a licensed onsite project supervisor or manager, and Barak did in fact engage a bonded and licensed general building contractor other than Vaknin to oversee the project, both before and after Barak had secured its own license.

After a hearing, the trial court granted respondents' application for a right to attach order and order for issuance of a writ of attachment solely against Barak in the amount of $385,388 upon the filing of a $10,000 undertaking.

The court denied respondents' application as to Weisz individually, but it ordered Weisz not to sell, encumber, or diminish the value of his residence in Los Angeles until further order of the court.[3] The court specifically found there was a basis in alter ego for its ruling and respondents' applications were based on breach of contract.

---

[2] The verified complaint alleged on information and belief that Vaknin never went to the job site, negligently failed to supervise any of Barak's work and was not a bona fide responsible managing officer of Barak but merely "rented" his license to Barak.

[3] As discussed, *post*, the court entered this order against Weisz in lieu of issuing a right to attach order.

Appellants timely appealed the court's orders.

## DISCUSSION

■ Under Code of Civil Procedure section 483.010, a prejudgment attachment may issue only if the claim sued upon is (1) a claim for money based upon a contract, express or implied; (2) of a fixed or readily ascertainable amount not less than $500; (3) either unsecured or secured by personal property, not real property (including fixtures); and (4) commercial in nature. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2007) ¶ 9:858, p. 9(II)-69 (rev. # 1, 2007).) The plaintiff must establish "the probable validity of the claim upon which the attachment is based." (Code Civ. Proc., § 484.090, subd. (a)(2); see also *Bank of America v. Salinas Nissan, Inc.* (1989) 207 Cal.App.3d 260, 271 [254 Cal.Rptr. 748].) "A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." (§ 481.190; see also *Loeb & Loeb v. Beverly Glen Music, Inc.* (1985) 166 Cal.App.3d 1110, 1120 [212 Cal.Rptr. 830]; see *Kemp Bros. Construction, Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474, 1476 [53 Cal.Rptr.3d 673].) A defendant who opposes a right to attach order must give notice of his objection, "accompanied by an affidavit supporting any factual issues raised and points and authorities supporting any legal issues raised." (§ 484.060, subd. (a).) The defendant may make a claim of exemption with respect to his property in the opposition. (§ 484.070.)

■ The amount to be secured by an attachment is based on "[t]he amount of the defendant's indebtedness claimed by the plaintiff" plus an estimated amount for allowable attorney fees and costs authorized by the court. (Code Civ. Proc., § 483.015, subd. (a)(1); see §§ 483.015, subd. (a)(2), 482.110.) That amount must be reduced by the amount of any indebtedness of the plaintiff that the defendant has claimed in a cross-complaint, or raised as a defense, if the claim is one upon which an attachment could be issued. (§ 483.015, subd. (b)(2), (3).)

■ At the hearing of an application for a right to attach order, the court shall consider the showing made by the parties appearing and shall issue such an order if it finds (1) the claim upon which the attachment is based is one upon which an attachment may be issued; (2) the plaintiff has established the probable validity of the claim upon which the attachment is based; (3) the attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based; and (4) the amount to be secured by the attachment is greater than zero. (Code Civ. Proc., § 484.090, subd. (a).) The court's determinations shall be made upon the basis of the pleadings and other papers in the record. (§ 484.090, subd. (d); *Loeb & Loeb v. Beverly Glen*

*Music, Inc., supra,* 166 Cal.App.3d at p. 1120 ["the court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation"].)

On appeal from an attachment order, we review the record for substantial evidence to support the trial court's factual findings. (*Bank of America v. Salinas Nissan, Inc., supra,* 207 Cal.App.3d at p. 273.) We apply the same evidentiary standard to an attachment hearing decided on affidavits and declarations as to a case tried on oral testimony. (*Lorber Industries v. Turbulence, Inc.* (1985) 175 Cal.App.3d 532, 535 [221 Cal.Rptr. 233]; *Loeb & Loeb v. Beverly Glen Music, Inc., supra,* 166 Cal.App.3d at p. 1120.) We will not disturb a determination upon controverted facts unless no substantial evidence supports the court's determination. (*Bank of America v. Salinas Nissan, Inc., supra,* at p. 273.)

## 1. Writ of Attachment Against Barak

Appellants contend the trial court erred in granting the right to attach order and in issuing a writ of attachment as to Barak on several grounds: (1) the record does not support a finding that the claim is one upon which attachment can be issued since respondents sought attachment based on a "punitive" statute; (2) the claim was neither fixed nor readily ascertainable; (3) respondents did not establish the probable validity of their claim; (4) Barak is entitled to retain all compensation paid to it for work performed after it was licensed; and (5) Barak is entitled to retain all compensation paid for "extras." We disagree.

## A. The Claim Is One on Which Attachment Can Issue

Appellants assert the claim is not one upon which attachment can be issued because respondents sought attachment based upon a "punitive" statute, the Contractors' State License Law, Business and Professions Code section 7000[4] et seq. (CSLL), rather than any express or implied contract. Without citing any cases and without analysis, appellants assert that attachment is not available when the application for right to attach is based on a cause of action brought under the CSLL. We hold a claim brought under the CSLL against an unlicensed contractor may appropriately form the basis for a right to attach order since an agreement for the performance of services lies at the heart of such a claim.

The CSLL embodies a comprehensive legislative scheme governing the construction business in California. The CSLL manifests a strong public

---

[4] All further statutory references are to the Business and Professions Code unless indicated otherwise.

policy favoring protection of the public against unscrupulous and incompetent contractors. Our Supreme Court has explained that "[t]he purpose of the licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services. [Citation.] The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business. [Citations.]" (*Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995 [277 Cal.Rptr. 517, 803 P.2d 370] (*Hydrotech*); see also *Construction Financial v. Perlite Plastering Co.* (1997) 53 Cal.App.4th 170, 176–177 [61 Cal.Rptr.2d 574] (*Construction Financial*).) It has long been established that the provisions of section 7031 represent "a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties." (*Lewis & Queen v. N. M. Ball Sons* (1957) 48 Cal.2d 141, 151 [308 P.2d 713] (*Lewis & Queen*).) Section 7031 applies "despite injustice to the unlicensed contractor." (*Hydrotech, supra,* at p. 995.) Accordingly, such provisions apply even when a person for whom work was performed knew the contractor was unlicensed. (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 424 [30 Cal.Rptr.3d 755, 115 P.3d 41] (*MW Erectors*); *Hydrotech, supra,* 52 Cal.3d at p. 997; *Construction Financial, supra,* 53 Cal.App.4th at p. 181.)

■ Under section 7031, subdivision (b), except as provided in section 7031, subdivision (e),[5] "a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract." Respondents provided evidence that Barak was unlicensed at the time the home improvement contract with respondents was executed, and performance under the contract commenced while it was still unlicensed. The record also showed it was not until several months afterwards that Barak obtained its license. Respondents presented a prima facie case under section 7031, subdivision (b), justifying the trial court in issuing a right to attach order upon their claim.

■ A claim under section 7031, subdivision (b) is fundamentally contractual in nature since it is based on an unlicensed contractor's agreement with the beneficiary to provide services, and the beneficiary's agreement to pay for same. Had the unlicensed contractor not received payment for unlicensed services, the beneficiary would have no cause of action to recoup such

---

[5] Subdivision (e) of section 7031 allows a court to determine there has been substantial compliance with licensure requirements upon a specific showing. There is no contention here that the exception under subdivision (e) is even remotely applicable. (See *MW Erectors, supra,* 36 Cal.4th at pp. 431–432 [discussing § 7031, former subd. (d)].)

payments under section 7031, subdivision (b). The trial court therefore did not err in ruling respondents' claim was contractual in nature.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### D. Barak Is Not Entitled to Compensation for Postlicense Work

Appellants argue that Barak should have been granted an offset for unpaid work performed after Barak became licensed. The fact that Barak became licensed sometime during performance of the contract is immaterial.

As our Supreme Court has stated, "To protect the public, the [CSLL] imposes strict and harsh penalties for a contractor's failure to maintain proper licensure. Among other things, the CSLL states a general rule that, regardless of the merits of the claim, a contractor may not maintain any action, legal or equitable, to recover compensation for 'the performance of any act or contract' unless he or she was duly licensed '*at all times* during the performance of that *act or contract.*' (§ 7031, subd. (a) . . . , italics added.)" (*MW Erectors, supra*, 36 Cal.4th at p. 418, fn. omitted; see *Great West Contractors, Inc. v. WSS Industrial Construction, Inc.* (2008) 162 Cal.App.4th 581, 587 [76 Cal.Rptr.3d 8] (*Great West Contractors*).) Thus, to recover for work performed on a project, the contractor must have been licensed at all times *before* commencing *any* work on the project. The Supreme Court has clarified that "if fully licensed at all times during contractual *performance*, a contractor is not barred from recovering compensation for the work solely because he or she was unlicensed when the contract was *executed.*" (*MW Erectors, supra*, at p. 419.)

Because appellants were not licensed at the time performance under the contract commenced, they are not entitled to any recovery for work performed even if Barak obtained its license during construction. (*MW Erectors, supra*, 36 Cal.4th at pp. 425–426 [Legislature intended to impose "stiff all-or-nothing penalty" for unlicensed work]; *Great West Contractors, supra*, 162 Cal.App.4th at pp. 591–592 [unlicensed contractor may not segregate acts performed in furtherance of contract into discrete tasks to avoid bar of CSLL].) Any postlicense work may not be set off against respondents' potential recovery. This would be so "even when the person for whom the work was performed has taken *calculated advantage* of the contractor's lack of licensure," since "*it matters not* that the beneficiary of the contractor's labors knew the contractor was unlicensed." (*MW Erectors, supra*, 36 Cal.4th

---

*See footnote, *ante*, page 845.

at p. 424, italics added; see *Hydrotech, supra,* 52 Cal.3d at pp. 997–1002.) Indeed, the beneficiary of services by an unlicensed contractor would not be estopped by equitable concerns from invoking the CSLL against a claim for payment or offset by the contractor. (See *MW Erectors, supra,* at pp. 423–424.)

### E. *The Court Properly Included "Extras" in the Attachment Amount*

■ Appellants contend that any compensation for "extras" was paid pursuant to separate *oral* agreements and, with one exception, such work was performed subsequent to Barak's becoming licensed. We have disposed of the argument that work performed after Barak obtained licensing is subject to a different rule than work performed before licensing, performance having begun without a license. We further hold that "extras" undertaken in furtherance of the contract are subject to the CSLL.

■ The CSLL does not simply apply to work by unlicensed contractors under formal contract; it is intended to deter unlicensed contractors from offering or performing *unlicensed services* for pay. (*MW Erectors, supra,* 36 Cal.4th at pp. 427–428; *Lewis & Queen, supra,* 48 Cal.2d at p. 147; *Great West Contractors, supra,* 162 Cal.App.4th at p. 592.) The Supreme Court has recognized that "parties do sometimes operate without, or beyond the boundaries of, a formal contractual arrangement, under an implicit understanding that the contractor is working on a quantum meruit basis." (*MW Erectors, supra,* at p. 428.) The court has held that reference to "act" or "contract" in section 7031, subdivisions (a) and (b) "ensures that one may not avoid the all-or-nothing bar against recovery for unlicensed services simply because there is no formal contract."[7] (*MW Erectors, supra,* at p. 428.) That appellants may have undertaken work for respondents not strictly listed within the four corners of the June 2004 written contract would not forestall application of the CSLL to such "extras."

### 2. *Stipulated Order Against Weisz**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[7] Section 7031, subdivision (a) states that, except as provided in section 7031, subdivision (e), which exception we have noted is not applicable to this case, "no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any *act* or *contract* where a license is required . . . ." (Italics added.)

*See footnote, *ante,* page 845.

## DISPOSITION

The orders are affirmed. Respondents are to recover costs on appeal.

Cooper, P. J., and Rubin, J., concurred.