**HAMILTON BEACH BRANDS, INC.,**
**a Delaware corporation**

v.

**METRIC AND INCH TOOLS, INC.,**
**a California corporation, et al.**

**Case No. CV 08–4678–AHM (RCx).**

United States District Court,
C.D. California.

April 8, 2009.

See also 614 F.Supp.2d 1080, 2009 WL 1357204.

Steven A. Browne, Waller Lansden Dortch and Davis, Los Angeles, CA, for Plaintiff.

Robert A. Cohen, Anker Reed Hymes Schreiber & Cohen, Woodland Hills, CA, for Defendant.

**PROCEEDINGS: (1) ORDER GRANT-ING PLAINTIFF'S APPLICATION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACHMENT AGAINST DEFENDANT METRIC AND INCH TOOLS, INC.; AND (2) ORDER PLACING UNDER SUB-MISSION PLAINTIFF'S APPLICA-TION FOR RIGHT TO ATTACH ORDER AND WRIT OF ATTACH-MENT AGAINST DEFENDANT TURBO TEK INT'L, INC.**

ROSALYN M. CHAPMAN, United States Magistrate Judge.

On November 12, 2006, plaintiff Hamilton Beach Brands, Inc., a Delaware corporation, filed a notice of application for right to attach order and order of issuance of a writ of attachment and application for right to attach order and order for issuance of attachment, a supporting memorandum of points authorities, and the supporting declaration of Hank Wood with exhibits. On December 3, 2008, defendants Metric and Inch Tools, Inc. ("MI Tools") and Turbo Tek Int'l, Inc. ("TTI"), both California corporations, filed an opposition to plaintiff's application and the opposing declarations of Fred Reinstein, KC Marie Knox and Robert Cohen with exhibit, and on December 4, 2008, plaintiff filed its reply. On March 18, 2009, plaintiff filed a supplemental reply.

The hearing on plaintiff's applications was held before Magistrate Judge Rosalyn M. Chapman on April 8, 2009. Steven A. Browne, attorney-at-law with the law firm Waller Lansden Dortch & Davis, appeared on behalf of plaintiff, and Robert A. Cohen, attorney-at-law with the law firm Anker, Reed, Hymes, Schreiber & Cohen, appeared on behalf of defendants.

## BACKGROUND

On July 17, 2008, plaintiff filed a complaint for damages against defendants MI Tools and TTI for breach of written contract and breach of oral contract, seeking damages on the breach of written contract in the amount of at least $2.15 million, damages on the breach of the oral contract in the amount of $10,000.00, and other further relief. Complaint at 7:2–14.

Plaintiff alleges it is a "leading distributor[ ] of small kitchen appliances and other consumer products" and it entered into a written Licensing Agreement with MI Tools on June 29, 2005, by which MI Tools obtained "the right to use certain of [plain-

tiff's] trademarks in connection with ... [the] manufacture, distribution, sale, advertising, and promotion of certain water coolers and dispensers and microwave ovens" in exchange for making royalty payments to plaintiff. Complaint ¶¶ 8, 12–13. On or about July 30, 2007, however, MI Tools breached the Licensing Agreement by "failing to make a royalty payment ... during the first two quarters of 2007[.]" *Id.* ¶ 14. On or about September 28, 2007, plaintiff and MI Tools amended their Licensing Agreement to allow MI Tools to pay the missed royalty payment in a series of installments, the last installment of which was to be paid by December 31, 2007. *Id.* ¶ 15. MI Tools also breached the Amended Licensing Agreement and did not pay the last installment, in the amount of $50,000. *Id.* ¶¶ 15, 18. MI Tools again breached the Amended Licensing Agreement on January 30, 2008, when it failed to make royalty payments in the amount of $300,000 for the third and fourth quarters of 2007. *Id.* ¶¶ 16, 18. Finally, on or about February 22, 2008, MI Tools "unilaterally declar[ed] that it was abandoning its obligations under the Amended [Licensing] Agreement[,]" thereby owing plaintiff an additional $1.8 million "for the minimum royalty payments due for the remaining three years of the agreement through the end of 2010...." *Id.* ¶¶ 17–18.

Plaintiff also alleges that on or about March 1, 2007, it and MI Tools entered into an oral agreement in which plaintiff "would provide consumer call center services for the Licensed Products and MI Tools would pay [plaintiff] $2,500.00 per month for performing these services...." Complaint ¶ 24. Although MI Tools paid some of the call center invoices, it failed to pay plaintiff $2,500.00 per month for the period of November 2007 through February 2008. *Id.* ¶ 25.

Finally, plaintiff alleges that "MI Tools is and was an alter ego of defendant [TTI] and any separateness between them has ceased to exist in that [TTI] so dominated, controlled, and/or managed MI Tools ... that it was operated for [TTI's] benefit ... and/or is and was undercapitalized or a mere shell ... through which [TTI] carried on its own business...." Complaint ¶ 11. Moreover, TTI "conducted nearly all of MI Tools' business with respect to [plaintiff] and others under the [Licensing] Agreement and the Amended [Licensing] Agreement .... [Thus, TTI] is responsible for the damages arising out of MI Tools' breaches of the [Licensing] Agreement and the Amended [Licensing] Agreement and [TTI] is jointly and severally liable for payment of any damages or award against MI Tools." *Id.* ¶¶ 21, 28.

The plaintiff did not serve the complaint and summons on defendants until on or about November 13, 2008, Docket sheet nos. 12–13, and defendants did not appear in this action until December 3, 2008, when they filed a motion to dismiss the complaint, as well as other motions. On February 18, 2009, District Judge A. Howard Matz denied defendants' motion to dismiss, granted defendants' petition to compel arbitration and determined sua sponte to transfer this action to the Eastern District of Virginia. Subsequently, Judge Matz ordered this Court to "resolve[ ] Plaintiff's pending application for writ of attachment" before he would transfer the case to the Eastern District of Virginia.

**DISCUSSION**

**I**

█ Federal Rule of Civil Procedure 64 provides for prejudgment attachment, and other prejudgment remedies, as follows:

(a) At the commencement of and throughout an action, every remedy is

available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.

(b) The remedies available under this rule include the following—however designated and regardless of whether state procedure requires an independent action:

- arrest;
- attachment;
- garnishment;
- replevin;
- sequestration; and
- other corresponding or equivalent remedies.

Fed.R.Civ.P. 64, Rule 64 codifies "long-settled federal law providing that in all cases in federal court, whether or not removed from state court, state law is incorporated to determine the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the judgment ultimately entered." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70 of Alameda Co.*, 415 U.S. 423, 436 n. 10, 94 S.Ct. 1113, 1123 n. 10, 39 L.Ed.2d 435 (1974); *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1063–64 n. 13 (9th Cir.1991); *see also* 11A Wright, Miller & Kane, *Federal Practice and Procedure*, Civil 2d § 2932 (1995 ed.) ("[S]tate law ordinarily determines when and how a provisional remedy [such as attachment] is obtained...."). This principle applies to federal diversity actions. *Baxter v. United*

*Forest Products Co.*, 406 F.2d 1120, 1125 (8th Cir.), *cert. denied*, 394 U.S. 1018, 89 S.Ct. 1635, 23 L.Ed.2d 42 (1969).

"Attachment is an ancillary or provisional remedy to aid in the collection of a money demand by seizure of property in advance of trial and judgment." *Kemp Bros. Constr., Inc. v. Titan Elec. Corp.*, 146 Cal.App.4th 1474, 1476, 53 Cal.Rptr.3d 673 (2007) (citations and internal quotation marks omitted). "Attachment is a harsh remedy because it causes the defendant to lose control of his property before the plaintiff's claim is adjudicated." *Martin v. Aboyan*, 148 Cal.App.3d 826, 831, 196 Cal. Rptr. 266 (1983). In California, the procedures and grounds for obtaining orders permitting prejudgment writs of attachment are governed by California Code of Civil Procedure ("C.C.P.") §§ 481.010, et seq. *Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co.*, 112 F.Supp.2d 1178, 1181 (C.D.Cal.2000). Since California's attachment law is purely statutory, it must be strictly construed. *Kemp Bros. Constr., Inc.*, 146 Cal.App.4th at 1476, 53 Cal.Rptr.3d 673; *Pacific Decision Sciences Corp. v. Superior Court*, 121 Cal.App.4th 1100, 1106, 18 Cal.Rptr.3d 104 (2004).

**II**

Defendants' amended opposition to plaintiff's application for right to attach order and writ of attachment raises several procedural defenses, including the defense that plaintiff did not properly serve defendants under California law with its notice of application for right to attach order and writ of attachment.[1] Defen-

---

1. Defendants initially contend this Court lacks subject matter jurisdiction and venue over plaintiff's application for writ of attachment because the Licensing Agreement "prescribes that the Eastern District of Virginia shall have **exclusive** jurisdiction and that the laws of the Commonwealth of Virginia shall govern the

Licens[ing] Agreement." Defendants' Amended Opposition at 3:10–4:13 (emphasis in original). However, defendants raised these claims before the district judge, who found no merit to them, *see* Docket Sheet nos. 51–52, and the district judge's rulings are the law of this case.

dants' Amended Opposition at 4:14–6.3. In response, relying on Rule 5(b)(2) and Local Rule 6–1, plaintiff states "that service was accomplished pursuant to the Federal and Local Rules, not the inapplicable state procedural rules relied upon by Defendants. In any event, Defendants admittedly received the papers several weeks ago and suffered no prejudice. . . ." Reply at 2:2–6. The Court finds plaintiff has properly served defendants, but not for the reasons plaintiff contends.

■ To the extent California law sets forth a method for service of process that is specific to attachment proceedings, the Court applies California law. *Cf. Hilao v.*

*Estate of Marcos,* 95 F.3d 848, 853–54 (9th Cir.1996). Initially, California law provides that "if the defendant has an attorney of record in the action, service shall be made on the attorney rather than on the defendant." C.C.P. § 482.070(e). However, at the time plaintiff filed the pending application for right to attach order and writ of attachment, defendants had not yet appeared in this matter; therefore, defendants had no attorney of record. In this situation, California law provides that "[e]xcept as otherwise provided in this title, a writ, notice, order, or other paper required or permitted to be served under this title may be served personally or by mail."[2] C.C.P. § 482.070(a) (emphasis

---

**2.** C.C.P. § 482.070(d) provides that "[i]f the defendant has not appeared in the action *and a writ, notice, order, or other paper is required to be personally served* on the defendant under this title, service shall be made in the same manner as a summons is served" under California law. C.C.P. § 482.070(d) (emphasis added)However, personal service on defendants was not required under California law, and Section 482.070(d) was, thus, inapplicable. In any event, since C.C.P. § 482.070(d) "refers back to the general California procedural law on service of a summons," it is not a statute specific to attachment and federal service of process law applies. *Hilao,* 95 F.3d at 853; *see also United States v. St. Paul Mercury Ins. Co.,* 361 F.2d 838, 839 (5th Cir.) ("We are of the opinion that [Fed.R.Civ.P.] 4(c) . . . governs the service of writs of garnishment issued in a proceeding in a federal court rather than [Florida] Rule 1.3(c) . . . which is not a rule peculiarly applicable to service of writs of garnishment."), *cert. denied,* 385 U.S. 971, 87 S.Ct. 510, 17 L.Ed.2d 435 (1966).

Under federal law, a domestic corporation may be served: "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and . . . by also mailing a copy of each to the defendant. . . ." Fed.R.Civ.P. 4(h)(1)(B). Alternately, service under Rule 4 may be effectuated in accordance with California law, Fed. R. Civ. p. 4(e)(1), (h)(1)(A), which provides that service

on domestic corporations "can only be accomplished by serving some individual as its representative." Judicial Council Comment foll. C.C.P. § 416.10. Such individuals may include: "the person designated as agent for service of process" (C.C.P. § 416.10(a)); "the president, chief executive officer, or other head of the corporation, a vice president, secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager or a person authorized by the corporation to receive service of process" (C.C.P. § 416.10(b)); or the corporation's agent under Section 1701 of the California Corporations Code (C.C.P. § 416.10(d)). However, in lieu of personal service,

> a summons may be served [on a corporate representative] by leaving a copy of the summons and complaint during usual office hours in his or her office . . . with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

C.C.P. § 415.20(a); *see also* Judicial Council Comment foll. C.C.P. § 415.20(a) ("If a defendant is a corporate . . . entity, service may be made in the first instance, in lieu of delivery of process to a specified officer or employee of such entity personally, by leaving the papers in his office.").

Here, the evidence shows that on November 13, 2008, during normal business hours, a

added). Since personal service of defendants was not required, C.C.P. § 484.040, service by mail was sufficient. Here, plaintiff mailed the requisite documents to defendants, Docket Entry nos. 12–15, which is all that is required to effectuate service under C.C.P. § 482.070(a). *Loeb & Loeb v. Beverly Glen Music, Inc.*, 166 Cal. App.3d 1110, 1115, 212 Cal.Rptr. 830 (1985).

■ The defendants also object that the notice of hearing [3] was insufficient under California law. *See* Defendants' Amended Opposition at 4:18–6:3. However, any possible defect in this regard was harmless since the hearing on the application was continued from December 10, 2008, to April 8, 2009, and defendants have had an opportunity to oppose the application. *Loeb & Loeb*, 166 Cal.App.3d at 1114, 212 Cal.Rptr. 830. Thus, there is no merit to this objection either.

### III

■ The moving party has the burden of establishing grounds for an attachment order. *Pos–A–Traction, Inc.*, 112 F.Supp.2d at 1181; *Loeb & Loeb*, 166 Cal. App.3d at 1116, 212 Cal.Rptr. 830; *see also* Legislative Committee Comment to 1974 Addition to C.C.P. § 484.090 ("[T]he plaintiff has the burden of proving (1) that his claim is one upon which an attachment may be issued, and (2) the probable validity of such claim."). "Generally, an order of attachment may be issued only in an action for a claim of money which is based upon an express or implied contract where the total amount of such claim is a fixed or 'readily ascertainable' amount not less than $500.00." *Pos–A–Traction, Inc.*, 112 F.Supp.2d at 1181–82; C.C.P. § 483.010(a). "A prejudgment attachment may secure the amount of the claimed indebtedness, as well as estimated costs and allowable attorney's fees." *Pos–A–Traction, Inc.*, 112 F.Supp.2d at 1182; *Goldstein v. Barak Constr.*, 164 Cal.App.4th 845, 852, 79 Cal. Rptr.3d 603 (2008); C.C.P. § 482.110(b).

Section 484.090 provides that before an attachment order is issued, the Court must find all of the following: (1) the claim upon which the attachment is based is one upon which an attachment may be issued; (2) the applicant has established "the probable validity" of the claim upon which the attachment is based; (3) the attachment is not sought for a purpose other than the recovery on the claim upon which the request for attachment is based; and (4) the amount to be secured by the attachment is greater than zero. To establish the "probable validity" of the claim, the applicant must show "it is more likely than not" it will obtain a judgment against the defendant on its claim. C.C.P. § 481.190.

■ The application for a right to attach order must be supported by an affidavit or declaration showing that the applicant, on the facts presented, would be entitled to a judgment on the claim upon

---

registered process server left the requisite documents with a security guard at the offices of defendants MI Tools and TTI, which "are on the fifth floor of a high-rise building with security measures in place to restrict access to unauthorized visitors," because the building's security guard "prevented the process server from accessing [MI Tools and TTI's] offices[,]" Mr. Reinstein, President of defendant corporations, received these documents from the guard on November 17, 2008, and the requisite documents were also mailed to

Mr. Reinstein. Docket sheet nos. 12–15; Declaration of Fred Reinstein ¶¶ 1, 9–11. Under these circumstances, even applying C.C.P. § 482.070(d), substituted service was sufficient. *Bein v. Brechtel–Jochim Group, Inc.*, 6 Cal.App.4th 1387, 1393–95, 8 Cal.Rptr.2d 351 (1992).

3. Under California law, "[n]o order or writ [of attachment] shall be issued ... except after a hearing." C.C.P. § 484.040.

which the attachment is based. C.C.P. § 484.030. The affidavit or declaration must state the facts "with particularity." C.C.P. § 482.040. Except where matters are specifically permitted to be shown upon information and belief, each affidavit or declaration must show that the affiant or declarant, if sworn as a witness, can testify competently to the facts stated therein. *Id.* "At a minimum, this means that the affiant or declarant must show actual, personal knowledge of the relevant facts, rather than the ultimate facts commonly found in pleadings, and such evidence must be admissible and not objectionable." *Pos–A–Traction, Inc.,* 112 F.Supp.2d at 1182. Moreover, "[a]ll documentary evidence, including contracts and canceled checks, must be presented in admissible form...." *Id.* (citation omitted); Ahart, California Practice Guide: Enforcing Judgments and Debts, ¶¶ 4:145–4:156 (2009 rev.). "A defendant who opposes a right to attach order must give notice of his objection 'accompanied by an affidavit supporting any factual issues raised and points and authorities supporting any legal issues raised.'" *Goldstein,* 164 Cal. App.4th at 852, 79 Cal.Rptr.3d 603 (quoting C.C.P. § 484.060(a)).

The Court finds plaintiff's application for a right to attach order and a writ of attachment should be granted against defendant MI Tools. First, plaintiff has shown that the claim is one for which an attachment may be issued since it a claim for money based on express, unsecured commercial contracts, the Licensing and Amended Licensing Agreements between plaintiff and defendant MI Tools, and the total amount of the alleged breach is "readily ascertainable." *See* Declaration of Hank Wood ("Wood Decl.")[4] ¶¶ 5, 11–16, Exhs. 1–1A; *CIT Group/Equip. Fin., Inc. v. Super DVD, Inc.,* 115 Cal.App.4th 537, 8 Cal.Rptr.3d 927 (2004); *Loeb & Loeb,* 166 Cal.App.3d at 1119, 212 Cal. Rptr. 830. Second, Mr. Wood's declaration, and the accompanying documentary evidence, establish the probable validity of plaintiff's claim that defendant MI Tools breached the Licensing Agreement and Amended Licensing Agreement, *Pos–A–Traction, Inc.,* 112 F.Supp.2d at 1184; *Loeb & Loeb,* 166 Cal.App.3d at 1119, 212 Cal.Rptr. 830. That is, the undisputed evidence shows the following facts: plaintiff and defendant MI Tools entered into a written Licensing Agreement on June 29, 2005, and a written Amended Licensing Agreement on September 28, 2007; defendant MI Tools breached these agreements by failing to pay plaintiff $50,000.00 due December 31, 2007, and $300,000.00 due January 30, 2008; plaintiff terminated these written agreements because of these breaches; and, had these written agreements not been breached, plaintiff would have earned minimum royalties of $600,000.00 per year between 2008 and December 31, 2010. Wood Decl. ¶¶ 5, 12–13, 15–16, Exhs. 1–1A, 5–6. "Third, there is nothing in the record to suggest that [plaintiff], in filing the instant [application for a writ of attachment], has any purpose other than the recovery on the claim upon which the attachment is based." *Pos–A–Traction, Inc.,* 112 F.Supp.2d at 1184. Indeed, defendants do not challenge the merits of plaintiff's application for an attach-

---

**4.** Defendants have made several evidentiary objections to portions of Mr. Wood's declaration, and the Court finds some of these objections, e.g., hearsay, lack of personal knowledge and conclusory statements, are valid. Specifically, the Court sustains defendants' objections to the following portions of Mr.

Wood's declaration: paragraph 17, lines 7–12; paragraph 17B, line 20; paragraph 17C, lines 1–3; paragraph 17D, lines 10–17; and paragraph 17E, lines 22–23. However, defendants' other evidentiary objections are denied.

ment order against defendant MI Tools. *See* Defendants' Amended Opposition at 6:4–8:18. Thus, plaintiff's application for a right to attach order and writ of attachment against defendant MI Tools should be granted.

## IV

The tentative ruling of this date found plaintiff had not shown "the probable validity" of its claim against defendant TTI, which was not a signatory to the written agreements with plaintiff, in that it had not established the application of the alter ego doctrine between defendants MI Tools and TTI; thus, this Court denied plaintiff's application for right to attach order and writ of attachment against defendant TTI. However, at the hearing, plaintiff requested this Court deny its application against defendant TTI without prejudice, rather than with prejudice, so plaintiff can seek discovery related to the alter ego doctrine and file a successive application for writ of attachment against defendant TTI. This Court requested the parties file memoranda addressing the propriety of discovery and a successive application, and set a briefing schedule. Thus, plaintiff's application for right to attach order and writ of attachment against defendant Turbo Tek Int'l, Inc. is under submission pending such briefing.

## ORDER

Plaintiff's application for right to attach order and writ of attachment **IS GRANTED** in the amount of $2,150,000.00 against defendant Metric and Inch Tools, Inc.