[No. B008047. Second Dist., Div. Seven. Apr. 16, 1985.]

LOEB & LOEB, Plaintiff and Respondent, v.
BEVERLY GLEN MUSIC, INC., Defendant and Appellant.

COUNSEL

Wilson & Becks and Ronald N. Wilson for Defendant and Appellant.

Loeb & Loeb and Alfred I. Rothman for Plaintiff and Respondent.

## OPINION

**LILLIE, P. J.**—Beverly Glen Music, Inc. appeals from order granting a right to attach order against it and from order denying its motion to set aside said attachment order. (Code Civ. Proc., § 904.1, subd. (e).)

I

### FACTS

In December, 1982, Otis Smith retained the law firm of Loeb and Loeb to provide legal representation for his two corporations, Otis Smith Productions and Beverly Glen Music, Inc., and for him individually. This representation included ongoing litigation involving Smith and Beverly Glen in two actions against vocalist, musician and recording artist Bobby Womack. The disputes concerned a recording contract between Beverly Glen and Womack and a personal management contract between Smith and Womack. Only Beverly Glen was a party to the first action; Smith and Beverly Glen were parties to the second. Both actions were concluded in a manner favorable to Smith and Beverly Glen; included in the judgment was an award of attorney fees for both actions, which amount was to be set off against royalties payable by Beverly Glen to Womack. Loeb and Loeb continued to

represent Smith and Beverly Glen in several postjudgment proceedings until January, 1984, when new counsel was substituted.

During the course of its representation, Loeb and Loeb sent monthly billing statements to Smith and Beverly Glen for legal services rendered and costs incurred. Included with each of these statements was a computer printout detailing the work performed and a transmittal letter from the supervising attorney. Interim payments were made to the law firm during the period from March 1983 to September 1983, but no payments were made after that date, despite repeated billings. On March 14, 1984, Loeb and Loeb filed a complaint for money against Smith and Beverly Glen in superior court, alleging the sum of $110,094.87 was due, owing and unpaid for legal services rendered and costs expended and advanced.

On April 5, Loeb and Loeb filed a notice of application and hearing for right to attach order and writ of attachment against Beverly Glen, setting hearing date for April 19. On April 11, Smith and Beverly Glen petitioned the Los Angeles County Bar Association for nonbinding arbitration under the mandatory fee arbitration provisions of Business and Professions Code section 6200 et seq.; they also requested and obtained a stay of judicial proceedings pending arbitration pursuant to Business and Professions Code section 6201. The parties thereafter entered into a stipulation that the attachment hearing set for April 19 would go off calendar.

On May 10, Loeb and Loeb moved the court to restore to calendar and hear its application for right to attach order and to declare the stay order inapplicable to the attachment remedy; the motion was set for hearing on June 1. Because of another change of counsel by Beverly Glen and a miscommunication between old and new counsel during transmittal of files, there was no appearance on behalf of Beverly Glen at the June 1 hearing. The court granted the motion to restore the matter to calendar and granted the application for right to attach order and order for issuance of writ of attachment against Beverly Glen.

Immediately upon learning of the ruling, Beverly Glen's new counsel moved ex parte for order setting aside the right to attach order and quashing the writ of attachment. The court denied the ex parte motion without prejudice to Beverly Glen's filing a noticed motion, which was set for hearing. Both sides were permitted to file additional papers prior to hearing. The matter was argued and submitted; two days later, on July 5, the court rendered its decision, denying Beverly Glen's motions to set aside order and quash writ of attachment. Beverly Glen appeals from the June 1 right to attach order and order for issuance of writ of attachment, and from the court's denial on July 5 of its motion to set aside these orders.

## II

### NOTICE OF HEARING

█ We first dispose of appellant's contention that the right to attach order and writ of attachment were improperly issued because there had been only 21 days notice of the hearing rather than the 25 days required by statute. Code of Civil Procedure section 484.040 requires notice of hearing be served on defendant at least 20 days prior to hearing; the Law Revision Comment to that section refers to section 482.070 for the manner of service, which in subdivision (b) specifically incorporates the provisions of section 684.120 extending time by five days when service is by mail to an address within the state of California. (Code Civ. Proc., § 684.120, subd. (b)(1).) Notice in this case was given by mail on May 10, 1984, for hearing on June 1; appellant is correct in its assertion that only 21 days notice were given rather than the 25 days required.

However, "[n]o judgment, decision, or decree shall be reversed or affected by reason of any error . . . or defect, unless it shall appear from the record that such error . . . or defect was prejudicial, and also that by reason of such error . . . or defect, the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error . . . or defect had not occurred or existed. There shall be no presumption that error is prejudicial, or that injury was done if error is shown." (Code Civ. Proc., § 475.) A review of the record before us demonstrates that appellant suffered absolutely no harm from the defective notice.

Ordinarily, under the noticed hearing procedure for writs of attachment, a defendant who fails to file notice of opposition to issuance of the writ is precluded from opposing its issuance. (Code Civ. Proc., § 484.060, subd. (a).) But appellant was not prevented from presenting opposition. On June 8, appellant moved ex parte for order setting aside the right to attach order, and quashing the writ of attachment, citing excusable neglect of counsel (Code Civ. Proc., § 473) and relying upon the ex parte opposition procedure set forth in section 485.240. The court denied the motion without prejudice to appellant filing a noticed motion, which was scheduled for hearing on June 18. On that date the court continued the matter for hearing on the merits and afforded appellant the opportunity to file additional papers in support of its motion prior to hearing. The matter was argued and submitted on July 3, 25 days after the date of appellant's ex parte motion in opposition to issuance of the writ. Appellant was in no way denied its opportunity to be heard in the matter, and had ample time to prepare for hearing.

Moreover, although in a motion under section 485.240 the defendant is the moving party, the plaintiff nevertheless continues to have the burden of proving (1) that his claim is one upon which an attachment may be issued and (2) the probable validity of such claim, the same burden he must meet under section 484.090. (Legislative Com. com. to 1974 addition to § 485.240.) The court thus had to consider at the July 3 hearing whether respondent had met its burden of proof as to its entitlement to the writ of attachment; there was no greater difficulty in appellant's opposing the issuance of the writ on July 3 than there would have been on June 1, for respondent had the burden of proof as to the probable validity of its claim at both hearings.

Our conclusion that there was no prejudice to appellant from the defective notice is further supported by the fact that appellant's failure to appear at the June 1 hearing was caused by its own change in counsel and the failure of former counsel to apprise new counsel of the upcoming hearing. The four-day notice defect had absolutely no impact on appellant's failure to oppose the application or appear at the June 1 hearing.

III

### ISSUANCE OF RIGHT TO ATTACH ORDER WHILE ARBITRATION PENDING

 Appellant contends the trial court improperly issued the right to attach order in violation of the mandatory stay of superior court proceedings during the pendency of the attorney fee arbitration. As appellant notes, Business and Professions Code section 6201, subdivision (c) provides: "Upon filing and service of the request for arbitration, the action shall be stayed, without necessity of court order, until the award of the arbitrators is issued or the arbitration is otherwise terminated." Appellant conveniently has omitted the following sentence in the section: "The stay may be vacated in whole or in part, after a hearing duly noticed by any party or the court, if the court finds that the matter, or any part of it, is not an appropriate one for arbitration under the provisions of this article." This sentence implies an authority and discretion in the trial court to determine an action, or a portion of an action, is not appropriate for arbitration, and the corollary thereof is that the court has the authority to lift the stay of the judicial proceeding, in whole or in part, if it so determines. (*Manatt, Phelps, Rothenberg & Tunney* v. *Lawrence* (1984) 151 Cal.App.3d 1165, 1172-1173 [199 Cal.Rptr. 246]; *Invicta Plastics, U.S.A., Ltd.* v. *Superior Court* (1981) 120 Cal.App.3d 190, 193 [174 Cal.Rptr. 476].) This was precisely the determination sought by respondent law firm in its motion to declare the stay order inapplicable to the attachment remedy and restore to calendar the

application for a right to attach order; the trial court had the authority to lift the stay upon its determination that the attachment proceeding was not amenable to arbitration. The necessary inquiry is whether this determination was properly made in this case.

The attorney fee arbitration procedure is expressly applicable to disputes concerning fees charged for professional services rendered. (Bus. & Prof. Code, § 6200, subd.(a).) The claim by respondent for fees owed is clearly amenable to arbitration within the meaning of this section. However, the attachment sought by respondent is a provisional remedy, ancillary to this main action. (2 Witkin, Cal. Procedure (2d ed. 1970) Provisional Remedies, § 1, p. 1465.) A court's determinations under the attachment law have no effect on the determination of any issues in the action, nor may the court's determinations regarding the attachment be given in evidence or referred to at trial. (Code Civ. Proc., § 484.100.) Neither the failure of a defendant to oppose the issuance of a right to attach order, nor the failure of a plaintiff to oppose issuance of an order reducing the amount to be secured by the attachment shall constitute a waiver of any defense to the opposing party's claim in the main action itself or in any other action. (Code Civ. Proc., § 484.110.) These sections recognize the attachment remedy as separate and distinct from the resolution of the actual claim giving rise to the action.

Whereas the resolution of the claim for fees is expressly arbitrable under the Mandatory Fee Arbitration statutes (Bus. & Prof. Code, §§ 6200, subd.(a), 6201, subd.(a)), nowhere in that article do we find authority for the arbitrators to issue an attachment or other provisional remedy to secure payment of any award or judgment that may be recovered in the action. Nor may such authority be found in the attachment law, which instructs that an application for attachment is to be filed in the *court* in which the action is brought. (Code Civ. Proc., § 484.010.) Respondent's entitlement to a right to attach order was an ancillary part of the main action which was not amenable to arbitration and, under the authority of Business and Professions Code section 6201, subdivision (c), the trial court properly lifted the stay of that portion of the proceeding to consider and rule on respondent's application for an attachment.

Although we find no cases which consider the coexistence of the provisional remedy of attachment and Mandatory Fee Arbitration, we do find some authority for such coexistence in the context of commercial arbitration in the Massachusetts Supreme Court case of *Salvucci* v. *Sheehan* (1965) 349 Mass. 659 [212 N.E.2d 243, 245] wherein it was held that there was nothing inconsistent between an agreement to arbitrate and an action at law utilizing the remedy of equitable attachment to secure payment of any award that might be obtained in the arbitration. "We see no reason why the Superior

Court should not have jurisdiction to bring the property in question within its control pending a determination of the issues of law under the procedure of the arbitration act. If the debt is proved to the satisfaction of the arbitrators, the court may continue within its equity power to do what is necessary for its collection. This is all the plaintiff seeks; he was not attempting to bypass the agreement to arbitrate, which, of course, he could not do." (*Salvucci* v. *Sheehan, supra,* 212 N.E.2d at p. 245.) This reasoning is persuasive under the circumstances before us. Respondent was in no way attempting to resist the arbitration procedure which it was compelled to engage in upon the election of appellant; respondent was merely attempting to utilize the civil procedure afforded to protect against appellant's disbursement and dissipation of assets during the pendency of the nonbinding arbitration and subsequent judicial proceedings. ██ The usual and main purpose of an attachment is to secure and insure the payment of any judgment that may be recovered in the successful prosecution of an action in order that the ends of successful litigation are not fruitlessly pursued or frustrated. (*Halstead* v. *Halstead* (1946) 72 Cal.App.2d 832, 836 [165 P.2d 513].) ██ We find no justification for denying respondent access to this protection during the delay in judicial proceedings necessitated by the Mandatory Fee Arbitration. The trial court properly heard the motion for right to attach order, despite the pendency of arbitration and the stay of judicial proceedings of the claim for attorney fees.

## IV

### Sufficiency of Evidence

██ Appellant asserts there is insufficient evidence to support the trial court's finding of the probable validity of respondent's claim against it. Code of Civil Procedure, section 484.090, subdivision (a) provides that the court shall issue a right to attach order if it finds, among other things, that "(2) The plaintiff has established the probable validity of the claim upon which the attachment is based." A claim has probable validity where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim. (Code Civ. Proc., § 481.190.) The claim in this instance was for unpaid fees for professional services rendered by respondent law firm to appellant corporation. In support of the application for right to attach order, respondent submitted the declaration of Albert Smith, the attorney in respondent law firm who was primarily responsible for the legal representation of Otis Smith individually and appellant corporation, Beverly Glen Music, Inc. Declarant describes the two litigations wherein respondent represented Otis Smith and appellant, In the Matter of Appeal De Novo of the Determination of the Labor Commissioner, Bobby D. Womack, Petitioner v. Otis Smith, an individual; Otis Smith d/b/a Beverly Glen

Music, Inc., a corp., Respondents (hereinafter trial de novo) and Beverly Glen Music, Inc. v. Bobby Womack (hereinafter Beverly Glen action). Both actions were pending at the time respondent was retained, and were intertwined insofar as they involved the contractual relationships of Womack, Smith and Beverly Glen.

At the time respondent was retained, Smith was advised that he and appellant corporation would be billed for legal services on the basis of time expended by respondent law firm, and respondent was retained under this fee arrangement. Appellant and Smith were sent monthly billing statements by respondent, each accompanied by a transmittal letter and a computer printout detailing the services rendered. These billing procedures were not questioned, disputed or otherwise objected to by Smith or appellant at any time during the representation. In January 1984, several months after favorable judgment in the trial de novo and after various postjudgment hearings in that action, Smith and appellant terminated their representation by respondent. Despite repeated billings, neither Smith nor appellant made any payment of the outstanding fees and costs owed to respondent subsequent to August, 1983; the amount outstanding is $110,094.87. Attached as exhibits to this application for order were the billing statements. This declaration, uncontradicted at the June 1 hearing, provides sufficient evidence of the probable validity of respondent's claim to support the trial court's decision to grant the application for right to attach order.

In support of its motion to set aside the right to attach order, appellant submitted the declaration of Otis Smith, sole owner and chief executive officer of appellant corporation. He states he and respondent agreed that Smith would be billed individually for services rendered to him as an individual, and appellant corporation would be billed for services rendered to it. Thus he claims the bills relating to the trial de novo, captioned "adv. Bobby Womack" and totalling in excess of $94,000, were addressed to Otis Smith and were for services rendered to him individually. Only the bills related to the Beverly Glen action, captioned "vs. Bobby Womack" and totalling $10,663.84, were addressed to appellant and were obligations of appellant corporation. Thus he claims respondent erroneously seeks to hold appellant corporation liable for obligations of Otis Smith, individually. Moreover, he asserts appellant's obligations to respondent have been paid in full. He also claims he never received computer printouts detailing the services performed.

Respondent refutes these assertions by supplemental declaration of Albert Smith, in which he describes respondent's billing procedure in greater detail. Respondent's normal and customary office procedure involved entering billing information into the firm's data processing system with the desig-

nation of the first party named in the litigation caption. Thus in the trial de novo, the caption lists "Otis Smith, an individual" before Beverly Glen Music, Inc., so the billing designation was Otis Smith. In the Beverly Glen action, only Beverly Glen Music, Inc. is a party, so the billing designation is obviously Beverly Glen. Submitted with this declaration, at the request of the court, were the transmittal letters and computer printouts respondent sent to appellant with all monthly billing statements. The letters are all addressed to Mr. Otis Smith, Beverly Glen Music, Inc., despite the fact that some reference the trial de novo, wherein the billing designation is Otis Smith, some reference the Beverly Glen action, and some reference both actions. The letters contain no indication of any sort that appellant had financial responsibility only for the fees connected with the Beverly Glen action. All letters mention that the billing statements are accompanied by computer printouts detailing the work performed.

In determining the probable validity of a claim where the defendant makes an appearance, the court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation. (Law Revision Com. com. to § 481.190.) The court properly considered all declarations in support of and in opposition to appellant's motion and found that the legal services were performed for both the individual and the corporation; the motion to set aside the attachment was denied. The court explained in its minute order: "Under the facts of this case, the monthly letter accompanying the computer print-out is a part of the bill and it is addressed to both the individual and his corporation. [¶] The individual's credibility is compromised by his statement that he never received computer print-outs. The monthly letters refer to it and he never complained of non-receipt until after this action." ■ It is well settled that when an issue is tried on affidavits and there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed. (*Weathers* v. *Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 108 [95 Cal.Rptr. 516, 485 P.2d 1132].) ■ Guided by this rule, we find sufficient evidence in the record before the trial court to support the probable validity of respondent's claim.

V

AUTHORITY OF COURT COMMISSIONER

■ There is no merit to appellant's final claim that the actions of the court commissioner herein exceeded the subordinate judicial duties a court commissioner may constitutionally perform. Article VI, section 22 of the California Constitution provides: "The Legislature may provide for the appointment by trial courts of record of officers such as commissioners to

perform subordinate judicial duties." Whether the use of court commissioners under the attachment law would be constitutional was specifically addressed by the California Law Revision Commission: "The Legislative Counsel has given the opinion that a provision authorizing court commissioners to perform judicial duties under the law 'would be constitutional to the extent it authorized the determination of preliminary matters, even though contested, and a final determination on the merits of an issue in litigation, if uncontested. This general rule is subject to the qualification that the determination of a contested preliminary matter may, depending upon the facts of a particular case, so involve the exercise of due process rights that it would be required to be made by a judge rather than an officer such as a commissioner.' The Legislative Counsel concluded that either preliminary or uncontested matters may be appropriately designated subordinate judicial duties by the Legislature on the authority of the California Supreme Court's decision in *Rooney* v. *Vermont Investment Corporation* [10 Cal.3d 351, 366 (110 Cal.Rptr. 353, 515 P.2d 297)]. The Legislative Counsel suggested, however, that the determination of a contested exemption claim, although a preliminary matter, is a matter that in some cases involve 'due process rights' so as to require the 'exercise of judicial power of the highest degree.' This position is buttressed by recent decisions regarding prejudgment remedies rendered by the United States and the California Supreme Courts that emphasize the importance of the defendant's right to property necessary for the support of the defendant and the defendant's family." (14 Cal. Law Revision Com. Rep. (1978) p. 98.) With these constitutional concerns clearly in mind, the commission recommended enactment of the following measure, which became section 482.060 of the Code of Civil Procedure: "(a) Except as otherwise provided in subdivision (b), the judicial duties to be performed under this title are subordinate judicial duties within the meaning of Section 22 of Article VI of the California Constitution and may be performed by appointed officers such as court commissioners." The exceptions set forth in subdivision (b) are inapplicable to the present case, in which the defendant is a corporation, not an individual, and thus may not claim exemptions based on its right to property necessary for the support of itself and its family. The statute unquestionably authorizes a court commissioner to hear and determine the within application for prejudgment attachment as well as appellant's opposition thereto.

■ There is a strong presumption in favor of the Legislature's interpretation of a provision of the Constitution. (*Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, 692 [97 Cal.Rptr. 1, 488 P.2d 161].) ■ We note the consideration given to the precise problem of constitutionality by the Law Revision Commission and the well-reasoned conclusion of the commission as to the permissible use of commissioners in a prejudgment attachment proceeding such as the one before us. We follow the presump-

tion in favor of their interpretation and conclude that this matter was properly heard and determined by the court commissioner under the authority of article VI, section 22 of the California Constitution and section 482.060, subdivision (a) of the Code of Civil Procedure.

## VI

### DISPOSITION

The orders are affirmed.

Thompson, J., and Johnson, J., concurred.