Filed 2/26/15

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LYDIG CONSTRUCTION, INC., | D066854 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CIVVS1301232) |
| MARTINEZ STEEL CORPORATION, | |
| Defendant and Appellant. | |


APPEAL from orders of the Superior Court of San Bernardino County, Michael A. Sachs, Judge. Affirmed.


Cohen & Lord, Karen D. Maher, James F. Boyle and Nairi S. Gruzenski for Defendant and Appellant.

Gibbs Giden Locher Turner Senet & Wittbrodt, Richard J. Wittbrodt and Sara H. Kornblatt for Plaintiff and Respondent.

The plaintiff and respondent in this construction contract dispute, Lydig Construction, Inc. (Lydig), was the general contractor on a large public works project. Defendant and appellant, Martinez Steel Corporation (Martinez), was the original steel

supply subcontractor on the project. Lydig sued Martinez for additional costs Lydig incurred by virtue of the fact Martinez failed to supply steel for the project in a timely manner and Lydig, with the public agency's approval, had been required to replace Martinez as the steel supplier.

Shortly after Lydig filed its complaint against Martinez, Lydig moved for a right to attach order and a writ of attachment. In support of its motion, Lydig presented the trial court with its business records and declarations from its employees. The evidence Lydig presented set forth the circumstances that gave rise to Lydig's claims against Martinez and the amount of its claims. Martinez opposed Lydig's motion and presented the trial court with declarations from one of its employees that set forth its contention Lydig owed it for, among other items, steel Martinez had delivered to the project. In addition, shortly before the hearing on Lydig's motion, Martinez filed a cross-complaint in which it alleged claims that, if successful, would entirely offset Lydig's claims against it.

The trial court granted Lydig's motion for a right to attach order and issued writs of attachment in the amount of $203,315. Martinez filed a timely notice of appeal and, as we explain, we reject Martinez's contention on appeal that its cross-complaint, as a matter of law, prevented the trial court from issuing a writ of attachment against it. We also reject Martinez's contention that Lydig's application for a writ of attachment was not supported by substantial evidence.

FACTUAL AND PROCEDURAL BACKGROUND

In 2010, Lydig was the successful bidder on a project to expand San Bernardino County's (the county) Adelanto Detention Center (the project) and entered into a contract

with the county to complete the project. Lydig's bid was based in part on a subcontractor's bid it had received from Martinez for reinforcing steel (rebar) needed to complete the project. After it was awarded the general contract on the project, Lydig entered into a subcontract with Martinez, which was effective on January 14, 2011.

Although the terms of the subcontract required that Martinez provide Lydig with payment and performance bonds that would protect Lydig in the event Martinez was unable to meet the requirements of the subcontract, Martinez was unable to do so. In lieu of the required bonds, Lydig agreed to take a personal guaranty from Martinez's owner.

In February 2012, Lydig became concerned about Martinez's ability to perform the terms of the contract. At that point, Martinez was unable to obtain raw steel from its steel supplier other than on a cash basis. In light of that circumstance, Lydig took it upon itself to purchase steel from the supplier and arrange to ship the steel to Martinez for fabrication as rebar and installation at the project by Martinez employees. Lydig intervened in this manner from February 2012 until June 2012.

In June 2012, Lydig discovered that 100,000 pounds of steel it had purchased and delivered to Martinez for use on the expansion project had been diverted by Martinez to other projects where Martinez was obligated to provide rebar. In response to this discovery, Lydig began obtaining rebar from another supplier and, for 10 days in June 2012, Lydig used Martinez employees to install the substituted rebar at the expansion project.

In June 2012, Lydig also began a formal process to replace Martinez as its rebar subcontractor. In August 2012, the county conducted a hearing on the issue and approved termination of Martinez's subcontract. The county hearing officer found:

3

"Martinez Steel has failed to perform its sub-contract in that it is unable to procure the steel to be fabricated into rebar and installed on the project, required by the sub-contract. [¶] . . . [¶] Martinez Steel has also failed to perform its sub-contract in that it has not been able to, and admits that it cannot, provided the payment and performance bonds required by the sub-contract. [¶] . . . [¶] Lydig has presented credible evidence, in significant respects unrefuted or admitted by Martinez Steel to be true, supporting its contention that the sub-contractor is untrustworthy and lacks the capacity to satisfactorily perform the scope of work." Thereafter, Lydig entered into a contract with another rebar supplier.

In March 2013, Lydig filed a complaint against Martinez and its owner in which it alleged that Martinez had breached the terms of the subcontract and that, a result of the breach, Lydig had experienced more than $200,000 in damages. In April 2013, Lydig filed its application for a right to attach order and writs of attachment. As we have indicated, Lydig's application was supported by declarations from Lydig's employees and its business records, which set forth in some detail its intervention in paying for steel and its discovery of the diversion of steel by Martinez. Included in its supporting documents was a verified copy of the county hearing officer's finding permitting Lydig to terminate Martinez's subcontract and obtain needed rebar from another supplier.

On May 14, 2013, Martinez and its owner filed their answers to the complaint and opposition to Lydig's attachment application. Martinez's opposition was supported by a declaration from one of its employees, Harry Williams. Williams's declaration did not dispute the specific factual contentions set forth by Lydig in its application. With respect to Martinez's performance of the contract and Lydig's unhappiness with it, Williams's

4

declaration stated that Lydig had kept a retention amount on payments due on the contract and that, "[r]ather than arranging to pay Martinez Steel, and in an effort to avoid paying the amount due and owing, [Lydig] asserted various pretexts to substitute another subcontractor for Martinez Steel. However, Martinez Steel had worked on the Project for nearly two years[] and had never missed a single pour of concrete." Williams's declaration also asserted that Lydig owed Martinez for work Martinez performed after Martinez's contract was terminated and only billed by Martinez on a September 30, 2012 invoice.

The Williams declaration also disputed the validity of change orders submitted by Lydig that documented deductions from amounts owed to Martinez because Lydig was required to purchase rebar from third parties following termination of Martinez's contract. Rather than setting forth any factual basis for his contention that the change orders were invalid, Williams's declaration simply stated: "These are unapproved Change Orders to which Martinez Steel will not agree and will vehemently dispute at trial." Williams's declaration also asserted that Martinez delivered more than 200,000 pounds of steel that Lydig had not accounted for in its application for a right to attach order.

Lydig filed a reply to Martinez's opposition. In its reply, Lydig submitted a further declaration from one of its employees, which stated that many concrete "pours" on the project had to be delayed because of Martinez's failure to timely deliver rebar, and records which showed that, by virtue of the rebar Lydig had obtained from third parties, Lydig did not owe Martinez any retained amounts. Lydig also submitted a contemporaneous log it kept of the steel delivered by Martinez. The log showed that in fact Martinez had not delivered the 200,000 pounds of steel Williams had alleged in his

5

declaration.

By way of stipulation, on May 20, 2013, Martinez was permitted to file a cross-complaint in which Martinez alleged that it was owed for rebar it had fabricated and installed at the project and that those amounts were greater than the amounts Lydig alleged in damages. On the same day Martinez filed its cross-complaint, the trial court conducted a hearing on Lydig's attachment application. After the arguments of the parties, including in particular Martinez's contention that its claims offset Lydig's claims, the trial court took the application for an attachment under submission. Thereafter, the trial court granted the application with respect to Martinez only and in the amount of $203, 315. Lydig then obtained writs of attachment for Riverside, Los Angeles and San Bernardino counties.

Martinez filed a timely notice of appeal from the order granting the right to attach.

DISCUSSION

I

In its principal argument on appeal, Martinez argues that because, as alleged, the claims set forth in its cross-complaint exceed the amount Lydig claims it is owed, the trial court had no power to grant Lydig's application for a right to attach order. We disagree.

A. *Standard of Review*

"It is well settled, of course, that a party challenging a judgment [or order] has the burden of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) Importantly, "'[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent . . . .' (Orig. italics.) [Citation.]" (*Rossiter v. Benoit* (1979) 88

6

Cal.App.3d 706, 712.) It is also well settled that where, as here, a trial court has ruled on an application for a writ of attachment, and its ruling is based on its resolution of factual conflicts in the affidavits submitted by the parties, its determination of the facts will not be disturbed on appeal. (*Loeb & Loeb v. Beverly Glen Music, Inc.* (1985) 166 Cal.App.3d 1110, 1120.)

B. *Writs of Attachment*

The procedures and grounds for obtaining orders permitting prejudgment writs of attachment are governed by Code of Civil Procedure[1] section 481.010 et seq. Generally, an order of attachment may be issued only in an action for a claim of money that is based upon an express or implied contract where the total amount of such claim is a fixed or "readily ascertainable" amount not less than $500. (§ 483.010, subd. (a).)

Before an attachment order is issued, the court must find all of the following: (1) the claim upon which the attachment is based is one upon which an attachment may be issued; (2) the applicant has established "the probable validity" of the claim upon which the attachment is based; (3) the attachment is not sought for a purpose other than the recovery on the claim upon which the request for attachment is based; and (4) the amount to be secured by the attachment is greater than zero. (§ 484.090.) In order to establish the probable validity of its claim, the applicant must show that it is more likely than not it will obtain a judgment against the defendant (or counter-defendant) on its claim. (§ 481.190.)

An application for a right to attach order must be supported by an affidavit or

---

[1] All further statutory references are to the Code of Civil Procedure.

7

declaration showing that the applicant, on the facts presented, would be entitled to a judgment on the claim upon which the attachment is based. (§ 484.030.) The affidavit or declaration must state the facts "with particularity." (§ 482.040.) Except where matters are specifically permitted to be shown upon information and belief, each affidavit or declaration must show that the affiant or declarant, if sworn as a witness, can testify competently to the facts stated therein. (*Ibid.*) This means that the affiant or declarant must show actual, personal knowledge of the relevant facts, rather than the ultimate facts commonly found in pleadings, and such evidence must be admissible and not objectionable.

All documentary evidence, including contracts and canceled checks, must be presented in admissible form, generally requiring proper identification and authentication, and admissibility as nonhearsay evidence or under one or more of the exceptions to the hearsay rule, such as the business records exception. (Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2014) ¶¶ 4:145– 4:156, pp. 4-35–4-38 (rev. #1, 2010).)

A prejudgment attachment may secure the amount of the claimed indebtedness as well as estimated costs and allowable attorney fees. (§ 482.110, subd. (b).) Importantly, however, the amount to be secured by an attachment shall be reduced or offset by the "amount of any indebtedness of the plaintiff [or counterclaimant] that the defendant [or counter-defendant] has claimed in a cross-complaint [or the original complaint] filed in the action if the defendant's [or counter-defendant's] *claim is one upon which an attachment could be issued*." (§ 483.015, subd. (b)(2), italics added.)

"[Section] 483.015 does not explicitly require more than a filed cross-complaint or

8

contract defense in an answer that would itself support an attachment.  However, to sustain reduction in a writ amount, most courts require that defendant [or counter-defendant] provide enough evidence about its counterclaims [or claims] and/or defenses to prove a prima facie case."  (Ahart, Cal. Practice Guide: Enforcing Judgments and Debts, *supra*, ¶ 4:64 at p. 4-18 (rev. #1, 2010).)  "Courts are generally suspicious of vague, unsupported counterclaims and defenses."  (*Ibid*.; see *Pos-A-Traction v. Kelly-Springfield Tire Co.* (C.D.Cal. 1999) 112 F.Supp.2d 1178, 1183.)

    C.  *Analysis*

    Contrary to Martinez's contention on appeal, in order to obtain the offset permitted by section 483.015, Martinez was required to establish the probable validity of its offsetting claims against Lydig.  (See Ahart, Cal. Practice Guide: Enforcing Judgments and Debts, *supra*, ¶ 4:64 at p. 4-18; see also *Pos-A-Traction v. Kelly-Springfield Tire Co.*, *supra*, 112 F.Supp.at p. 1183.)  This is the clear implication of the phrase "claim is one upon which an attachment could be issued" as set forth in section 483.015; it is also required as a matter of simple practicality.  If, by virtue of making claims that *are not* probably valid, a defendant could obtain an offset against a plaintiff's claim that is probably valid, a defendant could always and quite easily defeat a plaintiff's right to a prejudgment attachment.  We do not believe that in adopting our state's prejudgment attachment procedures the Legislature intended to effectively deprive litigants of the right to such prejudgment relief.

    The trial court implicitly found that Martinez did not establish the probable validity of its offsetting claims.  We note that the factual basis for Martinez's claims, though presented in a fairly conclusory manner in Williams's declaration, was set forth in

9

Martinez's *opposition* to Lydig's attachment application. In granting Lydig's application, notwithstanding that opposition, the trial court plainly found Martinez's factual presentation unpersuasive. We also note that, on the record, the trial court took note of the offsetting claims, asked the parties to argue with respect to their impact on Lydig's motion and, at the close of the hearing, indicated it would be considering the documentation provided by the parties. Where, as here, the record is otherwise silent with respect to what the trial court considered, we must presume it considered all the pertinent matters presented to it and ruled in favor of the prevailing party. (*Rossiter v. Benoit*, *supra*, 88 Cal.App.3d at p. 712.)

Like the trial court, we find that Martinez failed to establish the probable validity of its claims. In particular, with respect to its claim that it was entitled to credit for retained amounts and for 200,000 pounds of steel, Martinez provided no proof other than Williams's conclusory declaration, which, in turn, was rebutted both by Lydig's accounting records and contemporaneous logs provided by Lydig. In short, Lydig's documents entirely undermine the validity of Martinez's claims.

## II

Martinez also argues that Lydig failed to establish the validity of its claims. As we have indicated, Lydig provided both declarations and documentation that fully support the validity and amount of its claims.

10

DISPOSITION

The orders appealed from are affirmed.  Lydig to recover its costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

HALLER, J.

McDONALD, J.