Filed 10/16/25  Winthrop v. Dameshek CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication
or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

REID A. WINTHROP et al.,

    Plaintiffs and Respondents,

       v.

EVAN P. DAMESHEK et al.,

    Defendants and Appellants.

G064192

(Super. Ct. No. 30-2023-
 01367061)

O P I N I O N

        Appeal from an order of the Superior Court of Orange County,
David A. Hoffer, Judge. Affirmed.

        Stradling Yocca Carlson & Rauth, Jason de Bretteville,
Jeremy G. Suiter and Wesley Horton for Defendants and Appellants.

        Klein & Wilson, Mark B. Wilson, Manoah S. Marton; Winthrop
Law Group and Reid A. Winthrop, in pro. per., for Plaintiffs and
Respondents.

Attorney Reid A. Winthrop and his law firm Winthrop Law Group, PC (collectively the Winthrop plaintiffs) filed a lawsuit against former clients Evan P. Dameshek and Dameshek's company TriPharma, LLC (the Dameshek defendants) for, inter alia, breach of contract and quantum meruit. The Winthrop plaintiffs sought to recover $1.5 million in unpaid attorney fees and costs. Before serving the Dameshek defendants with service of process, the Winthrop plaintiffs successfully applied ex parte for right to attach orders and orders for writs of attachments against the Dameshek defendants. The trial court later denied the Dameshek defendants' motion to set aside those orders and to quash the writs of attachment.

We conclude the trial court did not err by denying the Dameshek defendants' motion to set aside the orders and to quash the writs of attachment. For the reasons we explain, we agree with the trial court the Winthrop plaintiffs did not violate the notice requirements of the Mandatory Fee Arbitration Act (MFAA) (Bus. & Prof. Code, § 6200 et seq.).[1] In addition, substantial evidence supports the trial court's findings the right to attach orders and writs of attachment were made "in an action on . . . claims for money, each of which is based upon a contract . . . where the total amount of the . . . claims is a fixed or readily ascertainable amount," within the meaning of Code of Civil Procedure section 483.010, subdivision (a). We therefore affirm.

---

[1] All further statutory references are to the Business and Professions Code unless otherwise specified.

2

## FACTS AND PROCEDURAL HISTORY

### I.

### THE WINTHROP PLAINTIFFS SUE THE DAMESHEK DEFENDANTS FOR UNPAID LEGAL FEES AND COSTS

On December 13, 2023, the Winthrop plaintiffs initiated an action against the Dameshek defendants (the lawsuit) by filing a complaint to recover approximately $1.5 million for unpaid legal fees and costs. The complaint contained claims for breach of written contract, quantum meruit, breach of oral contract, common counts, fraud, and declaratory relief. On December 22, 2023, the Winthrop plaintiffs filed an amended complaint in which a second claim for breach of oral contract was added.

### II.

### THE WINTHROP PLAINTIFFS SUCCESSFULLY APPLY EX PARTE FOR RIGHT TO ATTACH ORDERS AND FOR WRITS OF ATTACHMENT

On January 2, 2024, pursuant to Code of Civil Procedure section 485.240, the Winthrop plaintiffs filed ex parte applications for right to attach orders and orders for writs of attachments against the Dameshek defendants. The ex parte applications were supported by the declaration of attorney Reid A. Winthrop.

The trial court granted the Winthrop plaintiffs' applications, finding, inter alia, the Winthrop plaintiffs established the probable validity of the claims upon which the applications were based, the property sought to be attached was not exempt from attachment, and there was great or irreparable injury that would result to the Winthrop plaintiffs if issuance of the orders was delayed until the matter could be heard on notice because there was a danger the property sought to be attached would be concealed or "made unavailable to levy by other than concealment or impairment in

value." The court issued four orders confirming the Winthrop plaintiffs had a right to attach and directing the clerk to issue writs of attachment as to (1) Dameshek's property in the amount of $1,207,843.17; (2) TriPharma, LLC's property in the amount of $1,207,843.17; (3) Dameshek's property in the amount of $306,204.50; and(4) TriPharma's property in the amount of $306,204.50.[2]

III.

THE DAMESHEK DEFENDANTS INITIATE ARBITRATION UNDER THE MFAA

On February 12, 2024, the Winthrop plaintiffs' counsel sent an email to the Dameshek defendants' counsel, asking whether he would accept service of the operative complaint on behalf of his clients. The Winthrop plaintiffs' counsel "intended to include the notices of the client's right to fee arbitration [under the MFAA] in the service package along with the complaint and summons."

The following day, the Dameshek defendants initiated arbitration of their fee dispute with the Winthrop plaintiffs pursuant to the MFAA and filed a notice of stay of the Winthrop plaintiffs' lawsuit. That same day, the Dameshek defendants' counsel emailed the Winthrop plaintiffs' counsel, stating: "[L]awsuit is now stayed per attached Notice of Stay of Proceedings."

---

[2] According to another declaration by Winthrop filed in this action, after obtaining the attachment orders, the Winthrop plaintiffs "hired a registered process server to levy the property identified in the attachment application." That process servicer thereafter opened levies with the Los Angeles County Sheriff and served Chase and Bank of America. Both banks, however, reported the Dameshek accounts were closed or not found. Winthrop further reported the Winthrop plaintiffs' attachment efforts have been unsuccessful.

Counsel did not provide an answer whether he would accept service of process or any other documents on behalf of the Dameshek defendants.

## IV.

### THE TRIAL COURT DENIES THE DAMESHEK DEFENDANTS' APPLICATIONS TO SET ASIDE THE RIGHT TO ATTACH ORDERS, QUASH THE WRITS OF ATTACHMENT, AND RELEASE THE ATTACHED PROPERTY

On April 9, 2024, the Dameshek defendants filed four applications, under Code of Civil Procedure section 485.240, subdivision (c), seeking to set aside the right to attach orders, quash the writs of attachment, and release the attached property (the set aside applications). The set aside applications were brought on the grounds (1) the Winthrop plaintiffs failed to give the Dameshek defendants written notice of their right to mandatory fee arbitration under the MFAA, as required by section 6201, subdivision (a); (2) the Winthrop plaintiffs could not prove the attachments were based upon a claim for which an attachment may issue because the Winthrop plaintiffs' fee contracts were void and unenforceable; and (3) the Winthrop plaintiffs could not meet their burden of proving the total dollar amount of fees they sought was fixed or readily ascertainable, as required by Code of Civil Procedure section 483.010, subdivision (a).

On May 13, 2023, the trial court denied the set aside applications.[3] The Dameshek defendants timely appealed. (Code Civ. Proc., § 904.1, subd. (a)(5).)

---

[3] The trial court denied all of the parties' evidentiary objections; the Dameshek defendants do not challenge any of the court's rulings on the evidentiary objections in this appeal.

## DISCUSSION

## I.

### THE TRIAL COURT CORRECTLY REFUSED TO GRANT THE SET ASIDE APPLICATIONS ON THE GROUND THE WINTHROP PLAINTIFFS FAILED TO GIVE MFAA NOTICE

The Dameshek defendants argue the trial court erred by denying the set aside applications because the Winthrop plaintiffs failed to provide the Dameshek defendants notice of their right to arbitrate under the MFAA and stay the lawsuit. They argue their applications should have been granted on that basis and this court should reverse the order denying their applications "with instructions" the trial court grant the applications and "determine whether dismissal of the Civil Action is appropriate" under section 6201, subdivision (a). The Dameshek defendants' argument is without merit.

### A. *The Dameshek Defendants Initiated Arbitration Under the MFAA Before the Winthrop Plaintiffs Were Required to Provide Them With MFAA Notice*

The MFAA requires the California State Bar to establish and administer a system for State Bar members and their clients to arbitrate attorney fee or cost disputes between them. (§ 6200, subd.(a).) To ensure clients are able to exercise their right to arbitration pursuant to the MFAA, section 6201, subdivision (a) expressly requires an attorney to provide a written notice of the client's right to arbitration under the MFAA "to the client *prior to or at the time of service of summons or claim* in an action against the client." (Italics added; see *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 597 ["[A]n attorney wishing to pursue a claim for fees must first, prior to or at the time of serving an action—and only *after* a fee dispute has arisen" send notice of right to arbitrate under the MFAA"].) "Failure to

6

give this notice shall be a ground for the dismissal of the action or other proceeding." (§ 6201, subd. (a).)

Here, the Winthrop plaintiffs filed their original complaint against the Dameshek defendants on December 13, 2023, and filed an amended complaint on December 22, 2023. Under California Rules of Court, rule 3.110(b), the Winthrop plaintiffs had 60 days to serve the Dameshek defendants with the amended complaint.

Before the expiration of that 60-day period, on February 12, 2024, the Winthrop plaintiffs' counsel emailed the Dameshek defendants' counsel, asking whether he would accept service of the operative complaint. The Winthrop plaintiffs' counsel "intended to include the notices of the client's right to fee arbitration in the service package along with the complaint and summons."

Instead of answering the inquiry, the following day, the Dameshek defendants initiated MFAA arbitration with the Orange County Bar Association and filed a notice of stay of the lawsuit due to the initiation of that arbitration. Their counsel advised the Winthrop plaintiffs' counsel the lawsuit was "now stayed" pursuant to the notice of stay of proceedings filed by the Dameshek defendants.

The Dameshek defendants' initiation of MFAA arbitration and filing of the notice that the lawsuit was stayed demonstrates they were not only aware of their right to initiate arbitration of the parties' fee dispute pursuant to the MFAA, but they also actually exercised that right. As stated in the opening brief, the purpose of section 6201's notice requirement is "[t]o protect the client's statutory right to invoke mandatory fee arbitration and stay a civil action." As the Dameshek defendants were demonstrably aware of

7

their MFAA arbitration rights, the purpose of section 6201's notice requirement was fulfilled.

Therefore, even if the time by which the Winthrop plaintiffs were required to provide the Dameshek defendants with MFAA notice expired without their having given the requisite notice, the Dameshek defendants were not prejudiced by any such failing, and they do not contend otherwise in their appellate briefs. Thus, any such failing was harmless and certainly not a basis of dismissal of the lawsuit pursuant to section 6201, subdivision (a) or for otherwise granting the set aside applications.

In their opening brief and citing *Huang v. Cheng* (1998) 66 Cal.App.4th 1230, 1234 (*Huang*), the Dameshek defendants argue: "[T]he MFAA must be read as requiring an attorney to give written notice of the client's right to fee arbitration '*close in time or concurrently with the complaint.*' Because the attorney in that case had not done so, this Court affirmed the trial court's entry of judgment against the attorney for violating the MFAA's notice requirement. [Citation.] The same result should have happened here." (Italics in original.)

In *Huang, supra*, 66 Cal.App.4th 1230, an attorney argued he satisfied section 6201 by serving notice of the client's right to arbitrate under the MFAA at the same time the attorney sent his client a bill for professional services. (*Huang,* at p. 1232.) The attorney argued section 6201 simply requires MFAA notice be given "*anytime before* filing a complaint." (*Huang,* at p. 1234, italics in original.)

A panel of this court rejected the attorney's argument, holding: "[S]ection 6201 requires attorneys to provide their clients with written notice of the right to arbitrate *only after a fee dispute has arisen.*" (*Huang, supra*, 66 Cal.App.4th at p. 1232, italics added.) The court explained: "Section 6201,

subdivisions (a) and (d) provide clients, once notified of their rights, have a limited window of opportunity to request arbitration: (1) 30 days after receipt of the notice, (2) before filing an answer or any pleading seeking judicial resolution of the dispute, or (3) before commencing an action against the attorney based on 'alleged malpractice of professional misconduct.' It would be absurd to require a client to request arbitration within the 30-day limitations period if no controversy existed at that time." (*Id.* at p. 1234.)

The *Huang* court did not hold an attorney must give written notice of the client's right to fee arbitration close in time or concurrently with the complaint. Any such holding would be inconsistent with the clear and unambiguous language of section 6201, subdivision (a) that notice be given "prior to or at the time of service of summons or claim."[4]

### B. The Winthrop Plaintiffs Were Not Required to Provide MFAA Notice Before Seeking to Obtain Attachment Orders

In their opening brief, the Dameshek defendants also argue: "To comply with the MFAA's notice requirement, [the Winthrop plaintiffs] had to give [the Dameshek defendants] written notice of their statutory right to compel fee arbitration and stay the Civil Action before applying for and obtaining writs of attachment totaling more than $1.5 million per [the Winthrop plaintiffs]. [The Winthrop plaintiffs'] failure to give such notice subverted the purpose and policy of the MFAA, and the superior court should

---

[4] On five separate occasions in their opening brief, the Dameshek defendants incorrectly cite *Huang* as holding MFAA notice must be given "close in time or concurrently with the complaint." Also, in their opening brief, the Dameshek defendants argue *Huang* "requires substantial compliance with the MFAA's notice requirement." *Huang* does not say that either.

have set aside the attachment orders pursuant to this Court's decision in *Huang*[*, supra,*] 66 Cal.App.4th 1230."

The Dameshek defendants cite no legal authority, and we have found none, suggesting an attorney is prohibited from applying ex parte for right to attach orders and orders for writs of attachment before or until serving MFAA notice. *Huang* certainly does not stand for that proposition as that case did not mention, much less apply, the notice requirement of section 6201, subdivision (a) in the context of ex parte applications for attachment orders or writs of attachment.

The appellate court in *Loeb & Loeb v. Beverly Glen Music* (1985) 166 Cal.App.3d 1110, 1117 (*Loeb*) addressed a somewhat similar scenario and is therefore instructive. In that case a client appealed from an order granting a right to attach order against it and an order denying its motion to set aside the right to attach order. (*Id.* at p. 1113.) The client argued the trial court improperly issued the right to attach order in violation of the mandatory stay of superior court proceedings during the pendency of attorney fee arbitration under the MFAA. (*Id.* at p. 1116.)

The appellate court noted that subdivision (c) of section 6201 provides the trial court with authority and discretion to determine that an action, or a portion of an action, is not appropriate for arbitration, "and the corollary thereof is that the court has the authority to lift the stay of the judicial proceeding, in whole or in part, if it so determines." (*Loeb, supra,* 166 Cal.App.3d at p. 1116.) The court held the trial court properly heard the motion for a right to attach order, despite the pendency of the MFAA arbitration and the stay of judicial proceeding of the claim for attorney fees. (*Id.* at p. 1118.) The court explained that while the claim by the attorney for fees owed was "clearly amenable to arbitration" under the MFAA, "the

10

attachment sought by [the attorney] [wa]s a provisional remedy ancillary to this main action." (*Id.* at p. 1117.)

The *Loeb* court further explained: "A court's determinations under the attachment law have no effect on the determination of any issues in the action, nor may the court's determinations regarding the attachment be given in evidence or referred to at trial. [Citation.] Neither the failure of a [client] to oppose the issuance of a right to attach order, nor the failure of [an attorney] to oppose issuance of an order reducing the amount to be secured by the attachment shall constitute a waiver of any defense to the opposing party's claim in the main action itself or in any other action. [Citation.] . . . [T]he attachment remedy [is] separate and distinct from the resolution of the actual claim giving rise to the action." (*Loeb, supra*, 166 Cal.App.3d at p. 1117.)

The court stated: "Whereas the resolution of the claim for fees is expressly arbitrable under the Mandatory Fee Arbitration statutes [citations], nowhere in that article do we find authority for the arbitrators to issue an attachment or other provisional remedy to secure payment of any award or judgment that may be recovered in the action. Nor may such authority be found in the attachment law, which instructs that an application for attachment is to be filed in the *court* in which the action is brought. [Citation.] [The attorney]'s entitlement to a right to attach order was an ancillary part of the main action which was not amenable to arbitration and, under the authority of Business and Professions Code section 6201, subdivision (c), the trial court properly lifted the stay of that portion of the proceeding to consider and rule on respondent's application for an attachment." (*Loeb, supra*, 166 Cal.App.3d at p. 1117; see *Pech v. Morgan* (2021) 61 Cal.App.5th 841, 856 (*Pech*) [citing *Loeb, supra*, 166 Cal.App.3d at

11

p. 1117 ["Attachment is a provisional remedy, ancillary to the main action" with no effect on the determination of any issues in the action].)

The *Loeb* court acknowledged the dearth of cases considering "the coexistence of the provisional remedy of attachment and Mandatory Fee Arbitration," but found persuasive the Massachusetts Supreme Court's decision in *Salvucci v. Sheehan* (1965) 349 Mass. 659 (*Salvucci*) "wherein it was held that there was nothing inconsistent between an agreement to arbitrate and an action at law utilizing the remedy of equitable attachment to secure payment of any award that might be obtained in the arbitration." (*Loeb, supra*, 166 Cal.App.3d at p. 1117.) The *Salvucci* court held: "We see no reason why the Superior Court should not have jurisdiction to bring the property in question within its control pending a determination of the issues of law under the procedure of the arbitration act. If the debt is proved to the satisfaction of the arbitrators, the court may continue within its equity power to do what is necessary for its collection. This is all the plaintiff seeks; he was not attempting to bypass the agreement to arbitrate, which, of course, he could not do." (*Salvucci, supra*, 349 Mass. at p. 663.)

The *Loeb* court found the reasoning of *Salvucci* persuasive in resolving the issue before it. (*Loeb, supra*, 166 Cal.App.3d at p. 1118.) The court explained the attorney in *Loeb* "was in no way attempting to resist the arbitration procedure which it was compelled to engage in upon the election of [the client]; [the attorney] was merely attempting to utilize the civil procedure afforded to protect against [the client]'s disbursement and dissipation of assets during the pendency of the nonbinding arbitration and subsequent judicial proceedings. The usual and main purpose of an attachment is to secure and [e]nsure the payment of any judgment that may be recovered in the successful prosecution of an action in order that the ends

12

of successful litigation are not fruitlessly pursued or frustrated. [Citation.] We find no justification for denying [the attorney] access to this protection during the delay in judicial proceedings necessitated by the Mandatory Fee Arbitration. The trial court properly heard the motion for right to attach order, despite the pendency of arbitration and the stay of judicial proceedings of the claim for attorney fees." (*Ibid.*)

We agree with the reasoning of *Loeb* and the conclusion of the trial court based on *Loeb*'s reasoning that there is no law prohibiting an attorney from seeking attachment orders as a provisional remedy before or during an arbitration under the MFAA.[5] As pointed out by the trial court in its order denying the set aside applications, "even if [the Winthrop plaintiffs] had sent the notices before obtaining the attachment orders and [the Dameshek defendants] had initiated the arbitration, the Court would have been able to lift the stay and proceed with the attachment applications. Therefore, the failure to provide the written notice prior to obtaining the attachment orders does not mandate that the orders be set aside." The trial court, therefore, did not err by denying the set aside applications to the extent the applications were brought on the ground the Winthrop plaintiffs failed to give MFAA notice.

---

[5] In their opening brief, the Dameshek defendants argue the trial court "committed reversible error by upholding [the Winthrop plaintiffs'] subversion of the MFAA under [*Loeb, supra*, 166 Cal.App.3d 1110], a factually inapposite and poorly-reasoned decision that has never been followed by any appellate court." The Dameshek defendants do not explain how *Loeb* is "poorly-reasoned." In any event, *Loeb* has been cited in several published appellate court opinions including *Pech, supra*, 61 Cal.App.5th at page 856.

13

## II.

### THE TRIAL COURT CORRECTLY REJECTED THE DAMESHEK DEFENDANTS' ARGUMENTS THE ATTACHMENT ORDERS WERE NOT BASED ON A VALID CONTRACT OR ON A READILY ASCERTAINABLE AMOUNT OF FEES

The Dameshek defendants argue the trial court erred by failing to grant the set aside applications on the additional grounds the attachment orders were "based on fee contracts that are void and unenforceable under the Rules of Professional Conduct" and on "fee claims that are not fixed or readily ascertainable as required by the Attachment Law." For the reasons we explain, these additional challenges to the court's order denying the set aside applications are also without merit.

*A. Governing Legal Principles and Standard of Review*

Provisional relief in the form of an attachment "may be issued only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount." (Code Civ. Proc., § 483.010, subd. (a); see *Pech, supra*, 61 Cal.App.5th at p. 854.) "The trial court must issue a right to attach order if it finds, among other things, that '[t]he plaintiff has established the probable validity of the claim upon which the attachment is based.'" (*Pech,* at p. 854, citing Code Civ. Proc., § 484.090, subd. (a).)

"A claim has probable validity 'where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim.' [Citations.] This definition requires the plaintiff to 'at least establish a prima facie case.' [Citation.] If the defendant opposes the application, 'the court must then consider the relative merits of the positions of the respective

14

parties and make a determination of the probable outcome of the litigation.' [Citations.]." (*Pech, supra*, 61 Cal.App.5th at pp. 854–855.)

"A trial court's factual findings in an attachment proceeding, including its probable validity finding, are subject to our substantial evidence standard of review. [Citations.] 'We review the evidence on appeal in favor of the prevailing party, resolving conflicts and drawing reasonable inferences in support of the judgment.' [Citations.] '[W]e cannot substitute our inferences for those of the trial court reasonably grounded on substantial evidence.'" (*Pech, supra*, 61 Cal.App.5th at p. 855.)

*B. Substantial Evidence Supports the Trial Court's Finding the Attachment Orders Were Based on an Enforceable Contract*

The Dameshek defendants do not dispute the Winthrop plaintiffs' lawsuit constitutes "an action on a claim or claims for money, each of which is based upon a contract" within the meaning of Code of Civil Procedure section 483.010, subdivision (a). They argue the set aside applications should nevertheless have been granted because the attachment orders are based on fee contracts that are unenforceable. Specifically, they argue the fee contracts are invalid because the Winthrop plaintiffs had failed to obtain the Dameshek defendants' written consent regarding actual conflicts of interest arising from the Winthrop plaintiffs' joint representation of them, as required by rule 1.7 of the Rules of Professional Conduct (former rule 3-310).

In its order denying the set aside applications, the trial court found the Dameshek defendants failed to establish the fee contracts were unenforceable, explaining: "Plaintiffs' evidence shows that Defendants signed a broad conflict waiver in March 2019, covering past, present and future matters, and which detailed material facts relevant to the actual conflicts. [Citation.] Thus, Defendants' argument in this regard fails."

15

Our record contains, inter alia, the agreement referenced by the trial court which is entitled "Agreement Re Conflict Waiver and Related Matters" (boldface and some capitalization omitted), signed by the parties, and dated March 23, 2019. That agreement provides, inter alia, the Winthrop plaintiffs may represent the Dameshek defendants "in various past, present and/or future matters including ongoing litigation, and provide advice on related issues" notwithstanding the existence of multiple conflicts that have arisen, including, but not limited to those between TriPharma, LLC and Dameshek himself.

The Dameshek defendants argue that agreement, as well as the waiver provisions contained in the parties' fee agreements, are too broad, insufficiently advised the Dameshek defendants of actual conflicts of interest between them, and were improperly executed. Even if we were to assume the parties' fee agreements are unenforceable as written because they failed to be supported by the Dameshek defendants' informed written consent regarding conflicts of interest, the Winthrop plaintiffs were still entitled to the attachment orders.

"[I]n the absence of a valid fee agreement, an attorney may recover . . . a 'reasonable fee' for services rendered," pursuant to section 6148. (*Pech, supra*, 61 Cal.App.5th at p. 846.) When a fee agreement is void, "'there arises an implied contract to pay for services rendered thereunder, and the remedy of action sounding in *quantum meruit* is available to recover the reasonable value thereof.'" (*Huskinson & Brown v. Wolf* (2004) 32 Cal.4th 453, 461.)

As discussed *ante*, section 483.010, subdivision (a) of the Code of Civil Procedure allows for provisional relief in the form of an attachment in an action on a claim for money based upon a contract, whether express or

16

implied. The Dameshek defendants do not deny they had an agreement with the Winthrop plaintiffs to provide them with legal services for a fee. Instead, they argue that, notwithstanding such an agreement, the parties' written fee agreements as written are unenforceable due to the absence of a sufficient and valid waiver of conflicts of interest.

Because the record establishes the lawsuit is based on claims for money in the forms of causes of action for breach of express contract (oral and written) and also for breach of an implied contract, styled as a quantum meruit claim, the trial court correctly rejected the Dameshek defendants' challenge to the attachment orders on the ground the parties' fee agreements are not enforceable as written.

## C. Substantial Evidence Shows the Winthrop Plaintiffs' Fee Claims Are Based on a Fixed or Readily Ascertainable Amount

In its order denying the set aside applications, the trial court stated:

"Defendants contend if [the parties' three written fee contracts] are unenforceable, quantum meruit is Plaintiffs' only potential recovery, and that such recovery is not fixed or readily ascertainable, as required by Code of Civil Procedure section 483.010, subd. (a). As discussed above, Defendants failed to demonstrate that the fee contracts are unenforceable. Even if Defendants had shown said contracts are void, Defendants' argument that the claims for quantum meruit are not for a readily ascertainable amount is refuted by Plaintiffs' evidence.

"The Winthrop declaration provides a general description of the legal services provided to Defendants, includes a chart setting forth the amount of fees and costs incurred by Plaintiffs for work performed pertaining to the various matters on behalf of Defendants, and attaches invoices which

17

provide a detailed description of the nature of the work performed by Plaintiffs. [Citation.] Per the Winthrop declaration, Plaintiffs had performed at least $2 million in work over the course of 10 years. [Citation.] The Winthrop declaration also sets forth the requested amounts of the attachment orders, which were $1,207,843.17 and $306,204.50 per Defendant, and which amounts were based on the work performed by Plaintiffs. The foregoing evidence appears sufficient to show that, contrary to Defendants' argument, the reasonable value of services rendered under quantum meruit is in a readily ascertainable amount, as required by Code of Civil Procedure section 483.010, subd. (a)."

The Dameshek defendants do not question the accuracy of the trial court's summary of evidence before it or the sufficiency of such evidence in supporting the trial court's findings. Nor do they challenge the Winthrop plaintiffs' evidence regarding the type and amount of legal services that were provided. Instead, they argue the trial court "improperly relied upon the *contract based fee* calculations and invoices in Winthrop's declaration to hold that, even if the fee 'contracts are void, the reasonable value of services rendered under quantum meruit is in a readily ascertainable amount.'" Specifically, they argue: "In reaching this conclusion, the superior court committed at least two reversible errors of law. *First*, the superior court did not analyze whether Respondents' ethical violations (1) were willful, (2) warranted a complete denial of compensation, or (3) disincentivized compliance with the Rules of Professional Conduct as required by *Sheppard*[, *Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018)] 6 Cal.5th [59] at p. 95. *Second*, the superior court improperly equated Respondents' contract fee with a quantum meruit fee and on that basis determined the attachment amount was 'readily ascertainable.'"

18

In *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc., supra*, 6 Cal.5th at page 95 (*Sheppard*), the California Supreme Court explained: "When a law firm seeks fees in quantum meruit that it is unable to recover under the contract because it has breached an ethical duty to its client, the burden of proof on these or other factors lies with the firm. To be entitled to a measure of recovery, the firm must show that the violation was neither willful nor egregious, and it must show that its conduct was not so potentially damaging to the client as to warrant a complete denial of compensation. And before the trial court may award compensation, it must be satisfied that the award does not undermine incentives for compliance with the Rules of Professional Conduct. For this reason, at least absent exceptional circumstances, the contractual fee will not serve as an appropriate measure of quantum meruit recovery. [Citations.] Although the law firm may be entitled to some compensation for its work, its ethical breach will ordinarily require it to relinquish some or all of the profits for which it negotiated."

Here, in its order denying the set aside applications, the trial court found the Dameshek defendants "failed to establish that the fee contracts [were] unenforceable" as violative of the Rules of Professional Conduct. In so finding, the trial court implicitly found the Winthrop plaintiffs neither willfully nor egregiously violated said rules.

The Dameshek defendants' argument the trial court failed to analyze whether the Winthrop plaintiffs' ethical breaches warranted a complete denial of compensation to avoid disincentivizing compliance with the Rules of Professional Conduct is without support in the record. Nothing before us suggests the trial court was under any misapprehension regarding the governing law. In fact, the trial court cited *Sheppard, supra*, 6 Cal.5th 59

19

in its order denying the set aside applications. Nothing in *Sheppard* prohibited the trial court here from concluding, as it did, the amount of fees owed under the parties' contracts is also "the reasonable value of services rendered under quantum meruit." The Dameshek defendants offer no analysis with citations to the record and relevant authority supporting their contention the amount of the attachments do not reflect the reasonable value of services.

In concluding the Winthrop plaintiffs established the probable validity of their claim for the recovery of such fees, the court implicitly found a complete denial of compensation to the Winthrop plaintiffs was unwarranted. The court also implicitly found the Winthrop plaintiffs would not, as a consequence of recovering such fees, be disincentivized to comply with the Rules of Professional Conduct.

Substantial evidence therefore supports the court's finding the Winthrop plaintiffs made a sufficient showing they were entitled to the reasonable value of their services which is reflected in the ascertainable amount of fees owed on the parties' contracts. We find no error.

## DISPOSITION

The order is affirmed. Respondents to recover costs on appeal.


MOTOIKE, ACTING P. J.

WE CONCUR:


DELANEY, J.


GOODING, J.